184 N.J. Super. 264 (1982)
445 A.2d 1165
RICHARD J. ROWE, PLAINTIFF-APPELLANT,
v.
GOLDEN WEST TELEVISION PRODUCTIONS, A CORPORATION, ARNOLD SHAPIRO AND FRANK BINDHAMMER, COLUMBIA BROADCASTING SYSTEM (CBS), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1982.
Decided March 22, 1982.
*266 Before Judges MATTHEWS, PRESSLER and PETRELLA.
G. Richard Malgran argued the cause for appellant (Venezia and Nolan, attorneys).
Douglas C. Fairhurst, admitted pro hac vice, argued the cause for respondent (Goodman, Stoldt & Horan, attorneys; John D. Horan on the brief; Townley & Updike of counsel).
*267 The opinion of the court was delivered by MATTHEWS, P.J.A.D.
This is an appeal from an order of the Chancery Division, Middlesex County, dismissing the plaintiff's common law copyright infringement action.
On March 13, 1980 plaintiff, an inmate at Rahway State Prison, filed a three-count amended complaint against Golden West Television Productions, Columbia Broadcasting System (CBS), Arnold Shapiro and Frank Bindhammer. The first count alleged that Golden West and Arnold Shapiro, Director of Program Development for Golden West, had infringed plaintiff's common law copyright in the Rahway Prison "Juvenile Awareness Program" by making a television documentary entitled "Scared Straight." In the second count plaintiff alleged that defendant Frank Bindhammer, an employee of Golden West, had committed a fraud upon the public by representing himself as the founder of the "Juvenile Awareness Program." The third count alleged that defendant CBS had infringed the plaintiff's common law copyright as well as his right of privacy by making a television movie based on the "scared straight" theme. The complaint sought compensatory and punitive damages and injunctive relief.
A general denial was filed by all defendants, except Bindhammer.[1] Defendants moved for summary judgment, which was granted. In a letter opinion the trial judge found that plaintiff did not have a common law copyright in the "Juvenile Awareness Program." He held that "the fluid, free-flowing educational `scared straight' program, where no script existed and audience reaction and inmate participation changed with each presentation, *268 was not a concrete expression of an idea of plaintiff's that rose to the level of a tangible product deserving of a common law copyright." With regard to plaintiff's privacy claim, he found that except for "an insufficient bare assertion to the contrary," there was no question that plaintiff had not been "mentioned, referred to or depicted" in either film.
Plaintiff is an inmate at Rahway State Prison. According to assertions accepted as true for purposes of the summary judgment motion, sometime in January 1976 plaintiff originated a project at Rahway known as the "Juvenile Awareness Program." The essence of the program consisted of a confrontational session which was conducted by inmates serving life sentences and attended by juveniles who had begun experiencing difficulties with the law. During the course of each session the inmates exposed the youths to the realities of prison life by depicting the harshness and brutality of their incarceration in a raucous and uncensored manner. Each session differed from the other, depending on the reactions of the youths in attendance. It was the basic hope of the program that the juveniles would be "scared straight."
Plaintiff asserts that he is the sole originator of the format of the program. Moreover, though the actual sessions themselves are unscripted, he explains that he "instructed the inmates as to the contents of their talks with the juveniles as well as the method of conveying these thoughts to the juveniles." Rehearsals were also held "to insure that the correct message would be delivered to the children."
In early 1978 defendant Shapiro, who had read about the "Juvenile Awareness Program" in a Reader's Digest article, contacted officials at the prison about the possibility of filming a session. Though he subsequently spoke with inmates who were participants in the programs and obtained their consent to and cooperation in the making of the documentary, Shapiro neither met plaintiff at this time nor received his permission for the filming. On May 1, 1978 Shapiro filmed 17 youths before, *269 during and after a three-hour visit to Rahway which predominantly consisted of a confrontational session with the life-term inmates. The film was edited down to an hour, a narration was added and the completed documentary was first broadcast on television in March 1979.[2] The program has since been rebroadcast on numerous occasions.
In December 1978 CBS entered into an agreement with Golden West to produce a television film inspired by the documentary. The television film "Scared Straight-Another Story," a fictional dramatization, was produced by Shapiro and broadcast in November 1980.
Plaintiff maintains that he has a common law copyright in the Juvenile Awareness Program. Common law copyright protection is afforded under New Jersey law to "literary property" which is the result of "mental labor" and which has been embodied in some "material form." More specifically:
The established rule defining the rights of the owner of such [literary] property may be stated as follows: every new and innocent product of mental labor, which has been embodied in writing, or some other material form, while it remains unpublished, is the exclusive property of its author, entitled to the same protection which the law throws around the possession and enjoyment of other kinds of property. Whether the product of such labor consists in literary, dramatic or musical compositions, or designs for works of ornament or utility, planned by the mind of an artist, they are equally inviolable while they remain unpublished, and their owner may exercise the same supreme dominion over them that the owner of any other species of property may exercise over it. [Aronson v. Baker, 43 N.J. Eq. 365, 367 (Ch. 1887); emphasis supplied]
In the area of statutory copyright it is well-settled that protection is afforded only to the tangible expression of an idea and not to the idea itself. Uneeda Doll Co. v. P&M Doll Co., Inc., 353 F.2d 788, 789 (2 Cir.1965). Thus, as the United States Supreme Court in Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1953), explained:
Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea  not the idea itself.... *270 The copyright protects originality rather than novelty or invention  conferring only "the sole right of multiplying copies." [at 217-218, 74 S.Ct. at 470]
Similarly, in a common law copyright action our courts have never extended protection to the ideas contained within the copyright material. The valuable right protected in the case of copyright is "the manuscript or writing regarded as a peculiar combination of words or figures."[3]Haskins v. Ryan, 71 N.J. Eq. 575, 578-579 (Ch. 1906), aff'd o.b. 75 N.J. Eq. 623 (E. & A. 1909); Flemming v. Ronson Corp., 107 N.J. Super. 311, 315 (Law Div. 1969), aff'd o.b. 114 N.J. Super. 221 (App.Div. 1971).
Plaintiff contends that his contribution to the Juvenile Awareness Program goes beyond the mere articulation of an idea. He asserts that the sessions themselves are the tangible expressions of his conceptualization. More specifically, he maintains that the sessions are dramatizations of prison life which he has structured by instructing the inmates on what to say to the juveniles and on how to say it, and by rehearsing with them. Moreover, since he has never published his "drama," he concludes that it is protected by common law copyright.
Although he accepted all of plaintiff's contentions as true, the trial judge nonetheless found that "plaintiff's concept was never sufficiently fixed or frozen" to warrant copyright protection.
The fluid, free-flowing educational "scared straight" program, where no script existed and audience reaction and inmate participation changed with each presentation, was not a concrete expression of an idea of plaintiff's that rose to the level of a tangible product deserving of a common law copyright.
All plaintiff had done, the trial judge concluded, was originate the idea for a "real life program" and participate in its implementation.
*271 Defendants rely on Rokeach v. Avco Embassy Pictures Corp., 197 U.S.P.Q. 155 (S.D.N.Y. 1978), in support of their contention that there can be no copyright in real life events. There the author of an historical case study about delusional Christs brought a copyright infringement suit against the distributor and publisher of a movie and play, entitled "The Ruling Class" and having as the central character a delusional Christ figure. Defendants conceded that some of the words and phrases spoken by their character originated from statements of real mental patients recorded in plaintiff's book. In dismissing the complaint the court explained:
In no real sense can Rokeach claim to have created these statements any more than an historian or biographer can claim to have created the facts and statements reported in a work about an historic personage. Greenbie v. Noble, 151 F. Supp. 45, 113 USPQ 115 (S.D.N.Y. 1957). Nor does the fact that statements made by the mental patients may have occurred during conversations between them and Rokeach or the latter's research assistants give rise to copyright protection insofar as Rokeach is concerned. Norman v. Columbia Broadcasting System, Inc., 333 F. Supp. 788, 798, 172 USPQ 7, 14 (S.D.N.Y. 1971); Estate of Hemingway v. Random House, 23 N.Y.2d 341, 345-50; 296 N.Y.S.2d 771, 776-79, 244 N.E.2d 250, 253-255, (N.Y.Ct. of App. 1968).
Also see, Current Audio, Inc. v. RCA Corp., 71 Misc.2d 831, 337 N.Y.S.2d 949 (Sup.Ct. 1972) (no proprietary rights in the "give and take" of unrehearsed public press conference); Noble v. Columbia Broadcasting System, 270 F.2d 938 (D.C. Cir.1959) (spontaneous, unrehearsed, fictitious courtroom drama, using local lawyers and judges, and members of the studio audience as jurors, not subject to statutory or common law copyright).
Whether the session in question here was, as plaintiff contends, a dramatization of prison life created by him, or, as defendants assert, merely a real life exchange incapable of being copyrighted, we conclude that plaintiff's claim must fail. As we have noted, New Jersey law does not protect literary property which is not in a tangible form. And even if plaintiff is to be credited with the dramatization of the sessions so that the sessions themselves are considered to be the concrete expression of his work product, we find that his claim nonetheless must fail as a result of federal preemption.
*272 Though the Copyright Act of 1909 preserved state law copyrights with respect to unpublished works, the Copyright Act of 1976, 17 U.S.C.S. § 101 et seq., has now preempted this area. See, generally, 1 Nimmer on Copyright § 1.01(B). Specifically, the new act provides:
§ 301. Preemption with respect to other laws
(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 USCS § 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 USCS §§ 102 and 103], whether created before or after that date and whether published or unpublished, are governed exclusively by this title [17 USCS §§ 101 et seq.]. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
(b) Nothing in this title [17 USCS §§ 101 et seq.] annuls or limits any rights or remedies under the common law or statutes of any State with respect to 
(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103 [17 USCS §§ 102 and 103], including works of authorship not fixed in any tangible medium of expression; or
(2) any cause of action arising from undertakings commenced before January 1, 1978; or
(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 USCS § 106].
The stated intention of this section "`is to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright and that extend to works within the scope of the Federal copyright law.' H.R.Rep.No. 94-1476, 94th Cong., 2d Sess. at 130 (1976)." Harper & Row, Publishers, Inc. v. Nation Enterprises, 501 F. Supp. 848 (S.D.N.Y. 1980). Thus, a state law action will be preempted by this act if it meets a two-prong test: (1) if the nature of the work of authorship in which rights are claimed come within the subject matter of copyright as defined in §§ 102 and 103, and (2) if the rights granted under state law are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106. Id. Applied to plaintiff's claim for copyright infringement we find it clear that that action has been preempted by federal law.
*273 The "work of authorship in which rights are claimed" in this case is the confrontational session which was filmed on May 1, 1978. Plaintiff has staunchly maintained that the session was a "dramatization" of prison life which he has created. As such it clearly "comes within the subject matter" of 17 U.S.C.S. § 102.
Furthermore, the right granted under our law, in this case the right to prevent the filming and display of the session, is equivalent to some of the exclusive rights specified in 17 U.S.C.S. § 106. As Nimmer explains,
If under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will in itself infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption. [1 Nimmer on Copyright § 1.01(B)(1)]
New Jersey's common law copyright action is clearly equivalent to its federal counterpart, requiring only the act of copying to trigger its protection. See, e.g., Krahmer v. Luing, 127 N.J. Super. 270 (Ch.Div. 1974).
Plaintiff argues that his common law copyright has been preserved by 17 U.S.C.S. § 303. That section provides in pertinent part that "copyright in a work created before January 1, 1978, but not theretofore in the public domain or copyrighted, subsists from January 1, 1978, and endures for the term provided by section 302." As Nimmer explains the import of this section, "works created prior to January 1, 1978, but protected by common law copyright until such date, automatically acquired statutory copyright on January 1, 1978." 2 Nimmer on Copyright § 7.16(A)(2)(a). Accepting this statement of the law, in order for plaintiff's common law copyright to achieve such status, the statute makes clear, it must have been "created" before January 1, 1978. As defined in the act:

A work is "created when it is fixed in a copy or phonorecord for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the *274 work has been prepared in different versions, each version constitutes a separate work. [17 U.S.C.S. § 101; emphasis supplied]
The copyright claimed in this case was unquestionably "created" the day the session was held. Since the sessions differed each time they were presented, for purposes of the statute each must be considered a separate work. According to the undisputed facts, the session in question was conducted (and filmed) on May 1, 1978 and thus any copyright plaintiff had in that performance was "created" after the effective date of the Copyright Act. Consequently, plaintiff's common law copyright has not been preserved.
Except as we have heretofore discussed, plaintiff makes no statutory copyright claim. Nor could such a claim be maintained in light of his failure to comply with the registration requirement of 17 U.S.C.S. § 411(a) ("Subject to the provisions of subsection (b), no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title.")
In short, then, even if plaintiff had a common law copyright in the Juvenile Awareness Program (which the trial judge found he had not), his claim has clearly been preempted by federal law.
Affirmed.
NOTES
[1] Defendant Bindhammer was never served in this action due to the unascertainability of his whereabouts. The motion for summary judgment was thus brought on behalf of the remaining defendants. Since Bindhammer was not a party to the summary judgment motion, the trial judge preserved the second count of the complaint. In order to perfect an appeal, plaintiff subsequently moved for voluntary dismissal of the second count without prejudice. That motion was granted.
[2] The documentary won an Academy Award for Best Feature Documentary, 1978.
[3] New Jersey does recognize a separate cause of action for idea appropriation. As the court in Flemming v. Ronson Corp., 107 N.J. Super. 311, 315 (Law Div. 1969), explained:

An idea, as distinguished from the copyrighted contents of a book or a patented device or process, is accorded no protection in the law unless it is acquired and used in such circumstances that the law will imply a contractual or fiduciary relationship between the parties.
No such claim is alleged here.