788 A.2d 906 (2002)
347 N.J. Super. 71
Theodore JOHNSON, Plaintiff-Appellant-Cross-Respondent,
v.
BENJAMIN MOORE & COMPANY, Defendant-Respondent-Cross-Appellant, and
Peter Bishop and Ellen Singer, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 2001.
Decided January 28, 2002.
*908 Walter J. Tencza, Jr., Metuchen, argued the cause for appellant-cross-respondent.
Patrick J. Monaghan, Jr., Hackensack, argued the cause for respondent-cross-appellant (Monaghan, Monaghan, Lamb & Marchisio, attorneys; Mr. Monaghan and Mark F. Heinze, on the brief).
Before Judges PETRELLA, KESTIN and STEINBERG.
*907 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff, Theodore Johnson, appeals from the dismissal of his complaint that had asserted that defendant, Benjamin Moore & Co., based its Crayola Paints program on various concepts plaintiff had disclosed to it without paying for his ideas and his proposed product line. Plaintiff's proposal had described a do-it-yourself art project called Mural in a Can, consisting of a one-gallon paint can containing: a line drawing with color indications on transfer paper folded like a map; step-by-step instructions; information on color and paint quantities; brushes; masking tape; and a drop cloth. Prior to presenting his product proposal, plaintiff had defendant's representative sign a one-page letter agreeing to compensate him if his idea or product was used by defendant.
After a tortuous procedural history before many different judges, Judge Yannotti granted summary judgment in defendant's favor on the ground that plaintiff's proposal was neither novel nor original, but denied defendant's motions for counsel fees, costs and sanctions.
*909 On appeal Johnson raises the following issues:
1. Did the judge improperly grant summary judgment by not considering instructions and tools to be part of defendant's Crayola product, and by not considering paint to be part of plaintiff's proposed mural in a can product?
2. Did the judge improperly grant summary judgment by not considering evidence other than novelty in determining whether defendant had taken ideas from plaintiff's proposal?
3. Did the judge improperly grant summary judgment by holding that a pre-disclosure express written contract for sale of a non-novel idea was not enforceable without a post-disclosure agreement?
4. Did the judge improperly grant summary judgment by applying an improperly high standard of novelty?
5. Did the judge improperly grant summary judgment by not addressing whether the combination of ideas, as a whole, met a minimum standard of novelty?
6. Did the judge improperly grant summary judgment in the face of admissions of novelty by defendant's employees that created an issue of fact for the jury?
7. Did the judge improperly grant summary judgment because novelty, if any is needed, is a question of fact for the jury?
8. Did the judge improperly grant summary judgment because, in New Jersey, novelty should not be required for ideas in express contract situations when it is not required for trade secrets?
9. Did the judge improperly grant summary judgment because he did not discuss whether plaintiff's ideas might constitute trade secrets?
10. Did the judge improperly grant summary judgment because he did not address whether enforcement of the pre-disclosure agreement was in keeping with increasingly higher standards of morality?
11. Did the judge improperly grant summary judgment because he changed another judge's denial of summary judgment without any significant new material facts or new controlling law?
12. Did the judge improperly grant summary judgment by taking an improperly limited view of plaintiff's proposal as just paint-by-numbers when another judge had not taken such a view and plaintiff had not limited the proposal in such a manner?
13. Did the judge decide all issues as a matter of law so they are reviewable de novo by the Appellate Division?
14. Did the judge err by not considering the corporate receipt doctrine (not raised below)?
15. Did the judge err in not hearing plaintiff's motion to alter or amend final judgment in favor of Ellen Singer?
16. Did the judges err by dismissing or severing plaintiff's spoliation claims?
17. Did the judge err by allowing defendant to bring an amended defamation claim?
18. Are defendant's defamation and abuse of process claims barred by the entire controversy doctrine?
19. Did the judge err by failing to dismiss the defamation and abuse of process claims with prejudice based on the law of the case doctrine?
20. Should the defamation claim be dismissed for failure to state a claim under R. 4:6-2(e)?
21. Should the abuse of process claim be dismissed with prejudice?
*910 22. Did the judge err by failing to grant sanctions against defense counsel for intentional misrepresentation?
23. Did the judge err by quashing Lee Flemming's deposition?
24. Did the judge err by ordering plaintiff to pay for David Gallinson's deposition?
Defendant cross-appeals from the denial of its requested counsel fees and costs under the offer of judgment rule, and the denial of sanctions.

I.
In his November 21, 1996 complaint, plaintiff alleged that defendant[1] and Peter Bishop, defendant's Merchandising and Graphic Design Manager, misappropriated confidential information.
In a first amended complaint, plaintiff added claims of misappropriation of trade secrets, breach of an express contract, breach of a confidential relationship, unjust enrichment, and breach of an implied contract. A second amended complaint added more facts. A third amended complaint added Ellen Singer as a defendant and counts for tortious interference with prospective economic advantage by her and Bishop; and civil conspiracy.
Defendants denied the key allegations of these complaints, raised affirmative defenses and counterclaimed for abuse of process and commercial defamation.
Summary judgment was granted in favor of Singer on plaintiff's individual claims against her. All of the other claims against Singer were merged into plaintiff's claims against defendant because those alleged actions were taken on behalf of the corporation.
On November 17, 1998, defendant's summary judgment motion was denied. Thereafter, Bishop was granted summary judgment on plaintiff's individual claims against him, and the remaining claims were merged with the claims against defendant.
Plaintiff's motion to file a fourth amended complaint adding fraudulent concealment of evidence or spoliation of evidence was granted. Two different motion judges denied plaintiff's motions to dismiss the counterclaims, and reconsideration was denied at least twice. Ultimately, on October 15, 1999, Judge Yannotti dismissed the counter-claims without prejudice to defendant filing the counterclaims in a separate action.[2]
Defendant thereafter moved for summary judgment. It was granted on December 3, 1999, by Judge Yannotti who filed a written opinion. Although the spoliation and fraudulent concealment of evidence claims had been previously severed from the case, Judge Yannotti ruled on those claims as well, stating that extensive discovery was complete, the parties had fully briefed these issues, and plaintiff offered no persuasive reason why these contentions should not also be considered.
After plaintiff filed a notice of appeal on December 17, 1999, defendant moved for judgment and sought costs and fees under the offer of judgment rule (R. 4:58-3). Plaintiff filed an amended notice of appeal. Final judgment was entered on February 4, 2000, in which defendant was denied counsel fees, costs and sanctions. Plaintiff filed another amended notice of appeal and defendant cross-appealed.

II.
The record is voluminous and we need not burden this opinion with all the details.
*911 However, some exposition of the facts is necessary for certain issues we discuss.
In June or July 1995, plaintiff met Bishop at defendant's offices in Montvale to discuss painting a mountain scene for defendant. Plaintiff called Bishop in August to tell him he had developed a new product idea for defendant that he wanted to submit. Bishop then suggested that plaintiff put it in writing.
Plaintiff met with Bishop on August 28, 1995, and presented the following written statement, titled "New Product Proposal," which both parties signed:
I UNDERSTAND IT IS YOUR PRACTICE TO ENTERTAIN OR RECEIVE IDEAS OR SUGGESTIONS FOR THE MERCHANDISING OF BENJAMIN MOORE PAINT PRODUCTS. I HAVE DEVELOPED SUCH AN IDEA AND PRODUCT FOR SUBMISSION AND WOULD LIKE TO DISCLOSE IT TO YOU. I UNDERSTAND THAT IF YOU USE IT YOU WILL PAY ME A REASONABLE COMPENSATION BASED ON CURRENT INDUSTRY STANDARDS.
PLEASE ACKNOWLEDGE THE RECEIPT OF THIS LETTER WITH YOUR DATED SIGNATURE BELOW.
According to plaintiff, Bishop called him around September 25, 1995, to say he was going to "higher ups," and later told him that everyone in the office thought it was a good idea. However, Bishop wanted to talk to his superiors about it again.
The proposal was for a product called Mural in a Can, explained under "Product Description," as:
THIS PRODUCT IS IN THE CATEGORY OF THE WELL KNOWN DO-IT-YOURSELF ART PROJECTS, THAT WE ALL HAVE COME TO KNOW AND LOVE. IT WILL ALLOW CREATIVE EXPRESSION FROM
THE NOVICE HOME-OWNER TO THE PROFESSIONAL PAINTER, TO PAINT A MURAL WITH PROVEN RESULTS. COMPREHENSIVE STEP BY STEP INSTRUCTIONS COMBINED WITH THE EXTENSIVE COLOR SELECTIONS AND QUALITY OF BENJAMIN MOORE PAINT WILL VIRTUALLY INSURE A FINISHED RESULT THAT WILL COMPLEMENT ANY INTERIOR OR EXTERIOR. THE PRODUCT WILL BE AVAILABLE IN SEVERAL SIZES (SUCH AS: 4' X 6', 6' X 8', 8' X 10').
The product description continued:
THE PRODUCT WILL BE PACKAGED IN A STANDARD ONE GALLON PAINT CAN. THE LABEL WILL SHOW THE ACTUAL FINISHED MURAL IN AN APPROPRIATE SETTING (EX: THE SHEEP AND LAMB'S MURAL IN A BEAUTIFUL FINISHED NURSERY SCENE). INSIDE OF THE CAN, THE CONSUMER WILL FIND EASY STEP BY STEP INSTRUCTIONS (POSSIBLE VIDEO TAPED INSTRUCTIONS), THE COLOR INDICATIONS AND QUANTITIES NEEDED, AN ASSORTMENT OF BRUSHES, A ROLL OF MASKING TAPE, A DROP CLOTH AND A BLACK LINE DRAWING WITH NUMBERED COLOR INDICATIONS PRINTED ON TRANSFER PAPER FOLDED LIKE A MAP. THE LINE DRAWING WILL BE OFFERED IN SEVERAL SIZES, WHICH WILL BE INDICATED CLEARLY ON THE CAN.
The proposal also stated:
THIS UNIQUE MURAL PROJECT WOULD INCLUDE SUCH THEMES AS SHEEPS [sic] AND LAMBS IN A NURSERY SCENE, A DRAMATIC LANDSCAPE, A MEXICAN TILE *912 DESIGN, MASTERPIECE REPRODUCTIONS, ART DECO & ARCHITECTURAL DESIGNS JUST TO MENTION A FEW GREAT IDEAS WITH ENDLESS POSSIBILITIES.
A toll-free number was also suggested to aid purchasers of these "do-it-yourself art mural projects." Plaintiff also described his proposal as an alternative to choosing to paint an interior with a single color, using wallpaper, or a combination of the two. It also discussed advertising strategy and the proposal's strengths, weaknesses and appeal to various groups, including educators, hospitals, contractors and individuals.
A separate page typed in a different font and titled "Disclaimers," provided:
The Benjamin Moore "Mural in a can" new product proposal, was created by Theodore Johnson of Johnson Studios, in order to be implemented by Theodore Johnson. In the event that Benjamin Moore chooses to implement the "Mural in a can" new product, or a reasonable facsimile thereof, without the involvement of Theodore Johnson, Theodore Johnson will be due a fee of $500,000 for the concept and development of this product.
If the Benjamin Moore "Mural in a can" new product is implemented, and Benjamin Moore uses artwork from this program for print, outdoor, or broadcast or cable television advertising, Theodore Johnson will be due a royalty payment of $25,000, renewable annually.
Bishop said he never saw this separate sheet, while plaintiff claimed it was part of his submitted proposal.
Defendant hired Ellen Singer as Corporate Marketing Manager in May 1995. Her responsibilities included origination and implementation of the Crayola Paints program. On June 3, 1995, Singer had a gathering at her home and invited Kathy Monetti, a former colleague, who then worked for Binney & Smith, the company that owned and licensed the Crayola trademark. Singer obtained from her the name of the person in charge of licensing the Crayola brand name in the paint category. At her deposition, Monetti confirmed Singer's version about licensing the Crayola trademark.
Singer's March 4, 1996, initial Crayola Paints Proposal to Binney & Smith said it was "extending the Crayola® brand into the paint and related decorating products categories through a licensing agreement with Benjamin Moore & Co." Without going into full details, under the heading "concept," Singer wrote:
The umbrella concept is for a line of paint and related decorating products positioned for parents who want to create fun and imaginative environments for, and with, their children. The core product group would be a line of paints that come in color [palettes] specifically created with kids' tastes in mind. Ancillary products would include unique applicators (brushes, sponges, etc.) and kits to create specific finishes.
Singer asserted that she had never heard of plaintiff until after he filed suit, and had never seen the Mural in a Can proposal until her June 1997 deposition. She then testified that nothing in plaintiff's proposal was ever used by anyone who worked for defendant in any aspect of the Crayola campaign.
When Johnson saw an advertisement for the new product Crayola Paints he publicly threatened to sue, claiming Benjamin Moore stole his Mural in a Can marketing idea.
Warren Keegan, plaintiff's expert on marketing, business strategy, and international business, stated in a deposition that plaintiff's proposal was essentially paint by *913 numbers. However, he also described it as more than a Mural in a Can, but also an idea, a whole set of tools, and a comprehensive program of communications. This expert had two approaches to the calculation of damages.
In contrast, Ann Price, defendant's expert, stated in her report that there were no unique elements in plaintiff's product and that it was not similar to Crayola Paints.
In granting summary judgment, Judge Yannotti rejected plaintiff's claim that the motion was essentially the same motion previously denied and was not appropriate for reconsideration. The order entered on the earlier motion allowed defendant to renew its motion in the event that new facts were brought to the attention of the court. Defendant did come forward with new and additional facts in support of its motion. This additional discovery included plaintiff's expert report by Keegan addressing novelty, Keegan's deposition, and defendant's expert report by Ann Price, an expert in the marketing of paint products. Thus, renewal of the motion was procedurally proper. Moreover, Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 261, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988), points out that under our rules the court may reconsider interlocutory orders at any time before final judgment.
Defendant's motion also addressed plaintiff's claims that defendant fraudulently concealed or manufactured evidence. Judge Yannotti noted that although these counts contained in the fourth amended complaint had been severed, the orders entered permitted evidence concerning the alleged spoliation of evidence to be presented in support of plaintiff's principal claims. He was persuaded that he should address defendant's motion to dismiss these claims to resolve the entire matter because there had been extensive discovery on these issues, the arguments were fully briefed, and plaintiff did not offer any persuasive reason why these issues should not have been addressed.
The judge found no genuine issue of material fact as to the features of plaintiff's proposal. Thus, he could determine whether the ideas were novel or original as a matter of law.

III.
We have thoroughly reviewed the record in light of the arguments raised by the parties and are satisfied that plaintiff's arguments on appeal in points 1, 6, 10 through 13, 15, 16, and 22 through 24, as well as defendant's arguments on its cross-appeal, are without merit and do not warrant discussion. R. 2:11-3(e)(1)(E). In addition, we affirm the judgment substantially for the reasons expressed by Judge Yannotti in his thorough and comprehensive opinion of December 3, 1999. However, we address certain issues, including some that appear somewhat novel in this jurisdiction.
Plaintiff's claims of spoliation of evidence were properly dismissed. The judge relied on Viviano v. CBS, Inc., 251 N.J.Super. 113, 126, 597 A.2d 543 (App. Div.1991), certif. denied, 127 N.J. 565, 606 A.2d 375 (1992), where we listed elements of the tort as:
(1) pending or probable litigation involving the plaintiff;
(2) knowledge on the part of the defendant that litigation exists or is probable;
(3) willful or, possibly, negligent destruction of evidence by the defendant designed to disrupt the plaintiff's case;
(4) disruption of the plaintiff's case; and
(5) damages proximately caused by the defendant's acts.
*914 Here, the claims were dismissed because defendant never marketed plaintiff's Mural in a Can product, and plaintiff's concepts for murals for the masses lacked the requisite novelty or originality needed to support his claims. The evidence that had been purportedly fraudulently concealed or manufactured had no relevance to, or bearing on, the question of the novelty or originality of plaintiff's proposal. Under Viviano the evidence must be material to the cause of action. Even if plaintiff's allegations were true, they would not have disrupted plaintiff's case in any way. Therefore, the test for spoliation of evidence is not satisfied as a matter of law.

IV.
Plaintiff asserts that Judge Yannotti misinterpreted the Law Division's holding in Flemming v. Ronson Corp., 107 N.J.Super. 311, 315, 258 A.2d 153 (Law Div.1969), aff'd o.b., 114 N.J.Super. 221, 275 A.2d 759 (App.Div.1971), when he stated that "[o]ur courts have embraced the principle that a showing of novelty or originality is essential in a claim for wrongful use or appropriation of an idea." Plaintiff argues that his case is distinguishable because it involves an express written and undisputed contract, unlike Flemming which did not involve a promise to pay or a written contract. In addition, plaintiff contends that Flemming did not consider novelty to be essential, but rather deemed it an evidentiary tool in determining whether an agreement to pay should be implied. Plaintiff views Flemming too narrowly, as its holding is consistent with New Jersey law.
The plaintiff in Flemming claimed that the defendant had wrongfully appropriated his new product idea for an artificial candle, and sought damages for breach of an express or implied contract based upon unjust enrichment. Id. at 313, 258 A.2d 153. The judge found that no express contract existed because there was no promise to pay for the unsolicited submission of an idea. A mere invitation to the plaintiff to submit details of a proposal for an evaluation, coupled with an undertaking to contact him for further arrangements should the proposal be of interest, is not enough to create an express contract. There was also an assurance that all materials submitted would be returned if the submission were not accepted. Id. at 315, 258 A.2d 153. The judge explained:
It has been held that where a person communicates a novel idea to another with the intention that the latter may use the idea and compensate him for such use, the other party is liable for such use and must pay compensation if he actually appropriates the idea and employs it in connection with his own activities.
[Id. at 317, 258 A.2d 153 (citing Trenton Indus. v. A.E. Peterson Mfg. Co., 165 F.Supp. 523 (S.D.Cal.1958)).]
Under Flemming "[a] plaintiff is required to establish as a prerequisite to relief that (1) the idea was novel; (2) it was made in confidence, and (3) it was adopted and made use of." Ibid. (citing Official Airlines Schedule Info. Serv., Inc. v. Eastern Air Lines, 333 F.2d 672 (5th Cir.1964); Mitchell Novelty Co. v. United Mfg. Co., 199 F.2d 462 (7th Cir.1952); De Filippis v. Chrysler Corp., 53 F.Supp. 977 (D.C.N.Y. 1944), aff'd, 159 F.2d 478 (2d Cir.), cert. denied, 331 U.S. 848, 67 S.Ct. 1733, 91 L.Ed. 1857 (1947)). When the question is whether a person's idea has wrongfully been used, "similarities between the submission and the ultimate product may justify the factual inference that one was copied from the other." Id. at 318, 258 A.2d 153 (citing Int'l Indus., Inc. v. Warren Petroleum Corp., 99 F.Supp. 907 (D.C.Del.1951), aff'd in part and rev'd on *915 other grounds, 248 F.2d 696 (3d Cir.1957), cert. dismissed, 355 U.S. 943, 78 S.Ct. 529, 2 L.Ed.2d 523 (1958)).
Plaintiff errs in stating that Judge Yannotti did not consider whether there was evidence other than novelty as required by Flemming, supra (107 N.J.Super. at 318, 320, 258 A.2d 153). While Judge Yannotti discussed details of plaintiff's submission and concluded that they consisted of generic elements that could be used in marketing any product, he also discussed whether plaintiff's idea and defendant's product were similar.
Judge Yannotti correctly relied on Flemming in listing novelty as a prerequisite for relief in this State. We affirmed on the basis of the Law Division opinion in Flemming v. Ronson Corp., supra (114 N.J.Super. 221, 275 A.2d 759). Moreover, there is support in other jurisdictions for reaching the same result. Furthermore, Judge Yannotti's conclusion that plaintiff's idea was not novel is supported by the record as is his conclusion that plaintiff's idea and defendant's product were different.

V.
We disagree with plaintiff that Judge Yannotti improperly granted summary judgment by holding that a written pre-disclosure "contract for sale" of a non-novel idea was not enforceable without a post-disclosure agreement.
First, plaintiff inaccurately asserts that Judge Yannotti did not consider Apfel v. Prudential-Bache Sec. Inc., 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095, 1098 (1993). The judge cited and summarized Apfel in his opinion and relied on it for the proposition that a written contract for sale of non-novel ideas is not enforceable without a post-disclosure agreement.
Apfel held that when a seller and buyer enter into both a confidentiality agreement and a post-disclosure contract, the post-disclosure contract for the sale of an idea may be supported by adequate consideration, even if the idea is not novel. Ibid. However, if "the buyer and seller contract for disclosure of the idea with payment based on use, but no separate post-disclosure contract for use of the idea has been made" there is a problem in establishing "whether the idea the buyer was using was, in fact, the seller's." Ibid. Thus, in this latter category of cases, the New York courts require "[a] showing of novelty, at least novelty as to the buyer." Ibid. By requiring a showing of novelty, an otherwise intangible and amorphous idea is given "both the attributes of ownership necessary for a property-based claim and the value of the considerationthe disclosurenecessary for contract-based claims." Ibid.
Second, plaintiff asserts that the judge misread Chandler v. Roach, 156 Cal. App.2d 435, 319 P.2d 776, 781 (1957), which stated:
In Desny v. Wilder, 46 Cal.2d 715, at page 744, 299 P.2d 257, at page 273, the court said: "It is not essential to recovery that plaintiff's story or synopsis possess the elements of copyright protectibility if the fact of consensual contract be found. (Weitzenkorn v. Lesser (1953), supra, 40 Cal.2d 778, 791-792, 256 P.2d 947.)" And as Justice Traynor said, in the Stanley case, [Stanley v. Columbia Broad. Sys., Inc., 35 Cal. 2d 653, 221 P.2d 73, 90 (1950) ]: "It is not for the court to consider the quality of an idea or to pass judgment on the public's taste; the problem before it is not one of aesthetics but one of property rights." In the present case, it is "contract rights" rather than "property rights" with which we are concerned, but the reasoning applies with equal force.
*916 As plaintiff correctly notes, Chandler and Desny v. Wilder, 46 Cal. 2d 715, 299 P.2d 257, 266 (1956), establish that in California, a pre-disclosure contract for payment for a non-novel idea is enforceable. Plaintiff claims that the judge assumed that New York and California law were consistent in requiring some level of novelty for a pre-disclosure express contract. However, even though the judge did not explicitly note that New York and California law differ on whether novelty is needed, it is immaterial because New Jersey is not bound by either New York or California law.
Nonetheless, we note that New York and California law are not consistent on this point. Glen L. Kulik, The Idea Submission Case: When Is an Idea Protected Under California Law?, 32 Beverly Hills B.A.J. 99, 102 (Winter/Spring 1998). A professor at Loyola Law School in Los Angeles, points out:
The role that novelty plays in determining whether the defendant actually used the plaintiff's idearather than another ideawas explained by the New York Court of Appeals in Apfel v. Prudential-Bache Securities [616 N.E.2d 1095 (N.Y.1993) ]. The court explained that in each case where novelty was required, the contract was made before the idea was disclosed and "no separate post-disclosure contract for use of the idea [was] made." Thus, those cases "present[ed] the issue of whether the idea the buyer was using was, in fact, the seller's." The court observed that "there is no equity in enforcing a seemingly valid contract when, in fact, it turns out upon disclosure that the buyer already possessed the idea. In such instances, the disclosure, though freely bargained for, is manifestly without value." Where a post-disclosure agreement is entered into, there is no question that the idea had value to the recipient, and thus novelty is not required. However, where no post-disclosure agreement has been entered into, novelty is required to establish "the value of the consideration-the disclosure necessary for contractbased claims." [Id. at 1098.] Novelty, in other words, serves as evidence that the idea used by the defendant was actually obtained from the plaintiff, and it serves as evidence that the disclosure of the idea had the proverbial peppercorn's worth of value.
This is what the law should be in California as well. California's deviation from the "traditional view" in implied contract cases is an aberration not only by comparison with the law of other states, but even by comparison with other aspects of the law of California. Though novelty is no longer required for protection of ideas by implied contract in California, novelty always has been and continues to be a necessary element of a confidential relationship claim even in California, [Faris v. Enberg, 97 Cal. App.3d 309, 158 Cal.Rptr. 704 (1979),] just as it is elsewhere.
[Lionel S. Sobel, The Law of Ideas, Revisited, 1 UCLA Ent. L.Rev. 9, 62-63 (Spring 1994) (footnotes omitted).]
"California courts now protect idea disclosures under both express and implied-in-fact contract theories. Since the act of disclosure suffices as consideration for a contract, novelty is a non-issue." Ronald Caswell, Comment, A Comparison and Critique of Idea Protection in California, New York, and Great Britain, 14 Loy. L.A. Int'l & Comp. L.J. 717, 735 (July 1992). The commentator added that although California appellate decisions set precedent only for the courts below them, the California Supreme Court arguably adheres to this approach. Id. at 737, 299 *917 P.2d 257. He bases this claim on the fact that the California Supreme Court has twice denied petitions for rehearing, rejecting the petitions in Donahue v. Ziv Television Programs, Inc., 245 Cal.App.2d 593, 54 Cal.Rptr. 130 (1966), and Chandler v. Roach, supra (319 P.2d at 777-783). While not dispositive, this lends some significance to the appellate decisions, and suggests that the California Supreme Court approves of these decisions. Caswell, supra (14 Loy. L.A. Int'l & Comp. L.J. at 737-738).
Despite the difference between New York and California law on the novelty issue, Judge Yannotti did not err in his interpretation of New York law. In addition, Flemming, supra (107 N.J.Super. at 317, 258 A.2d 153), is consistent with New York law.
Plaintiff also asserts that the judge misread Richter v. Westab, Inc., 529 F.2d 896 (6th Cir.1976), when he stated:
The court suggests, in dicta, that parties should be able to freely contract for the use of an idea, whether novel or not. In such a situation, the court may enforce the agreement freely made by the parties. But, as stated previously, that principle is applicable to agreements where the particular idea has been fully disclosed and the agreement to compensate for use of the idea follows. In the absence of such a "post-disclosure" agreement, any right of compensation necessarily turns on whether the idea is novel or original.
Plaintiff cites to Richter, id. at 902, where the court stated:
[I]f the parties had made an agreement in advance of the meeting that any sale arising from the use of concepts presented at the meeting would require royalty payments to [plaintiffs] Richter & Mracky, the facts here would probably require a judgment for plaintiffs.
We doubt that Westab would ever enter into such a contract, preferring to hear the presentation, or to see the proposed designs, before agreeing to a contract for their use.
But, Richter was applying Ohio law. Id. at 897. The language plaintiff quotes is dicta because the Richter plaintiffs first made a presentation to defendant and then after the meeting, the parties discussed compensation and a royalty of five percent. Id. at 898. Richter found an express contract, id. at 899, which was post-disclosure, because it was agreed upon after the presentation. But, in any event, reversal is not required even if the Sixth Circuit's application of Ohio law is not consistent with New York or New Jersey law.
The trend in this area of law is not to extend coverage to include more ideas. "[D]espite the attention a small number of highly publicized cases continue to receive in our celebrity-crazed media, ideas are protected in only the most limited of circumstances, and most potential lawsuits will either never be filed or will suffer a quick and inglorious death." Kulik, supra (32 Beverly Hills B.A.J. at 100). Thus, there is no merit to plaintiff's claim that the judge improperly held that a pre-disclosure express written contract for sale of a non-novel idea was not enforceable without a post-disclosure agreement.

VI.
Plaintiff asserts that the judge applied an improper, high standard of novelty, and that the judge found that his idea was not novel despite conceding that it was novel as to the defendant and the paint industry, and as to its use.
Before addressing plaintiff's claims that the judge made such findings, we address his assertion that the judge applied a standard higher than the patent standard and *918 thus contrary to Softel, Inc. v. Dragon Med. & Scientific Communications, Inc., 118 F.3d 955, 969 (2d Cir.1997), cert. denied, 523 U.S. 1020, 118 S.Ct. 1300, 140 L. Ed.2d 466 (1998). Softel first stated that cases involving submission of ideas
pose two problems for the courts. On the one hand, how can sellers prove that the buyer obtained the idea from them, and nowhere else, and that the buyer's use of it thus constitutes misappropriation of property?.... On the other hand, there is no equity in enforcing a seemingly valid contract when, in fact, it turns out upon disclosure that the buyer already possessed the idea.... A showing of novelty, at least novelty as to the buyer, addresses these two concerns. Novelty can then serve to establish both the attributes of ownership necessary for a property-based claim and the value of the considerationthe disclosure necessary for contract-based claims.

[Ibid. (quoting Apfel, supra (600 N.Y.S.2d 433, 616 N.E.2d at 1098)).]
Softel explained: "This quotation (especially the comment `at least novelty as to the buyer') illustrates that the term `novelty' is used in this line of cases in a very different, and much weaker, sense than it is used in patent law. Cf. 35 U.S.C. § 102 (defining novelty for purposes of patent law)." 118 F.3d at 969.
We disagree with plaintiff that Judge Yannotti erroneously set a standard for novelty that is higher than the standard in patent cases. Even assuming New Jersey courts would be bound by Softel, that case explained that the misappropriation of ideas standard for novelty, at least as to the buyer, is not as strong a standard as the patent standard because the patent standard (set forth in 35 U.S.C.A. § 102) stems from whether an invention was patented, described in a printed publication, known, or used by others in this country. Judge Yannotti did not apply a standard that was higher than this. There was no novelty as to the buyer, that is, as to defendant, to support plaintiff's claim of misappropriation.
Plaintiff incorrectly claims that the judge conceded that plaintiff's proposal may have been novel as to the defendant, the paint industry (or the architectural paint industry), and as to its use. Marketing a project that emphasizes multiple colors on a wall is not novel. Plaintiff conceded this fact in his proposal, stating that paint by number and other do-it-yourself art projects are a category that "we all have come to know and love." Even if defendant did not have a previous marketing campaign similar to Crayola Paints, that does not establish that plaintiff's proposal for marketing was novel, or even novel as to the defendant, which may have been aware of such potential, but had not implemented them prior to Crayola Paints.
Plaintiff also asserts that the judge erred in relying on Nadel v. Play by Play Toys & Novelties, Inc., 34 F.Supp.2d 180, 182-188 (S.D.N.Y.1999), aff'd in part, vacated in part, 208 F.3d 368 (2d Cir.2000), and AEB & Assocs. Design Group, Inc. v. Tonka Corp., 853 F.Supp. 724, 727-736 (S.D.N.Y.1994)), because those cases did not involve express written pre-disclosure agreements or any admissions by the defendants that the ideas were novel. Nadel (34 F.Supp.2d at 184 n. 1) involved neither a written pre-disclosure nor any post-disclosure agreement. In addressing a misappropriation claim in AEB, the court only looked at the lack of novelty and the defendant's independent development of its product, AEB, supra (853 F.Supp. at 733-735), and did not discuss pre-disclosure or post-disclosure agreements. However, in the case at bar there were no admissions by defendant that plaintiff's idea was novel.
*919 The Second Circuit in Nadel appears to have established a new standard for New York cases. Khreativity Unlimited v. Mattel, Inc., 101 F.Supp.2d 177, 185 (S.D.N.Y.), aff'd, 242 F.3d 366 (2d Cir. 2000), cert. denied, ___ U.S. ___, 122 S.Ct. 57, 151 L.Ed.2d 25 (2001), addressed the changes set forth in Nadel:
Although the "novel to the buyer" standard "involve[s] a fact-specific inquiry that focuses on the perspective of the particular buyer," the Second Circuit indicated that summary judgment is possible:
[I]n some cases an idea may be so unoriginal or lacking in novelty that its obviousness bespeaks widespread and public knowledge of the idea, and such knowledge is therefore imputed to the buyer.... In such cases, a court may conclude, as a matter of law, that the idea lacks both the originality necessary to support a misappropriation claim and the novelty to the buyer necessary to support a contract claim.

Nadel, 208 F.3d at 378-79 (citations omitted). After Nadel, the general novelty cases are no longer controlling for contract-based claims. See, e.g., Murray v. National Broadcasting Co., 844 F.2d 988, 992-94 (2d Cir.1988) (applying general novelty standard to contract-based claim)[, cert. denied, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)]. Nevertheless, those cases remain relevant to the issue of whether an idea is so lacking in novelty that knowledge of the idea can be imputed to the buyer. See Nadel, 208 F.3d at 379 (construing Oasis Music, Inc. v. 900 USA, Inc., 161 Misc.2d 627, 614 N.Y.S.2d 878 (Sup.Ct. 1994), "to hold that, because plaintiff's ideas had such a high degree of commonality, the ideas were so unoriginal that, as a matter of law, they were non-novel to the buyer.").
Judge Yannotti's conclusion is supported by this Nadel standard for New York law and we adopt that standard. Plaintiff's ideas may be viewed as so unoriginal that, as a matter of law, they were not novel as to the defendant. No new standard was set that is higher than patent cases, because patents involve a series of statutory requirements with an application process and proof of publication that is not relevant to misappropriation-of-ideas cases. Thus, there was no application of an improperly high standard of novelty.

VII.
Plaintiff, relying on Ryko Mfg. Co. v. Nu-Star, Inc., 18 U.S.P.Q.2d 1047, 1049 (D.Minn.1990), aff'd, 950 F.2d 714 (Fed. Cir.1991), asserts that even in patent law a combination of old elements can be patentable and that the combination must be considered as a whole in determining its obviousness. Plaintiff claims that the judge only looked at the product's individual elements without determining if a combination of all of its elements, including the use of a toll-free help line, was unique, and in doing so, ignored Keegan's expert testimony to that effect.
Plaintiff also relies on a prior judge's motion statement in an earlier denial of summary judgment, that all of the individual elements could be preexisting and that there could be a novel combination of ideas that met a minimum standard of novelty. However, the motion judge's statement was made early in the case when discovery was incomplete.
Plaintiff asserts that if combinations of old elements are patentable, then they have to be protectable under a pre-disclosure express written contract. But, here we are not dealing with patents. Plaintiff then relies on Softel Inc., supra (118 F.3d at 968), for the proposition that a combination *920 of ideas can be novel. However, the Second Circuit made this statement in its discussion of New York's substantive law of trade secrets. Softel, Inc. went on to state that the District Court's holding that four design elements were not novel or original did not address the plaintiff's claim that the combination of the elements was a trade secret. Ibid. That court relied on Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 174 (2d Cir.1990), and SmokEnders, Inc. v. Smoke Watchers Int'l, Inc., 179 U.S.P.Q. 111, 112 (N.Y.Sup.Ct.1973), for the proposition that a combination of public domain elements may be a trade secret. However, there is no discussion in these cases that the submission of an idea may be novel in a submission-of-idea case when it includes a combination of elements that are not novel, and we have found no reported case in any jurisdiction with such a discussion.
Plaintiff next contends that Judge Yannotti erred by not applying a minimal standard of novelty (if any is needed) to whether the combination of ideas which Mural in a Can had in common with Crayola Paints was novel. The judge reviewed and compared the elements of plaintiff's proposal with the Crayola Paints concept and concluded that they were not similar. He concluded that taking paint by numbers, using point-of-purchase displays, providing photographs of murals in room settings, giving ideas for the use of particular colors and directions for buying paint, and setting up a toll-free number for consumer problems, did not create a novel idea.
Although the judge did not directly address the claim that plaintiff proposed using these preexisting ideas in a novel way, his conclusion also rejects that idea. He observed that these elements were routine, ordinary ideas that could be employed for the marketing of any project, and that can be read as routine ideas used in a non-novel way. Accordingly, we reject plaintiff's claim that the judge improperly granted summary judgment by not addressing whether this combination of ideas met a minimum standard of novelty and we substantially agree with Judge Yannotti's reasoning in the conclusion he reached.

VIII.
Plaintiff next asserts that the judge improperly granted summary judgment because novelty, if any is needed, should always be a question of fact for the jury.
Tate v. Scanlan Int'l, Inc., 403 N.W.2d 666, 671 (Minn.Ct.App.1987), is one of a few cases that declares novelty in implied contract situations a question of fact for a jury.[3]Tate cites only one other court so holding, Belt v. Hamilton Nat'l Bank, 108 F.Supp. 689, 692 (D.C.Cir.1952), aff'd, 210 F.2d 706 (D.C.Cir.1953). However, we emphasize that the case at bar is not an implied contract situation and there is no definitive New Jersey case on point. Flemming, supra (107 N.J.Super. at 313, 258 A.2d 153), was a case tried before a judge without a jury, and it did not address whether novelty was a question of fact or law.
In Duffy v. Charles Schwab & Co., 123 F.Supp.2d 802, 808 (D.N.J.2000), the judge was faced with a situation where no New Jersey cases had addressed whether the test for a claim of idea misappropriation, in determining that an idea is sufficiently novel to warrant protection, is a question of law, fact, or a mixed question of both.
*921 Thus, the District Court undertook to forecast the New Jersey rule:
After due consideration of the issue, we hold that the New Jersey Supreme Court would determine that although some of the factors relevant to a determination of novelty may be factual, the ultimate determination of whether an idea is novel is a question of law for the court. The court's role in this regard is analogous to the court's role with respect to the issue of obviousness in a patent case. See, e.g., Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 716 (Fed. Cir.1991) (holding that when facts relevant to issue of obviousness are not in dispute, determination of obviousness is question of law that can be resolved by court on summary judgment). In so holding, we are in accord with the only other court interpreting New Jersey law to address this issue. See Bergin v. Century 21 Real Estate Corp., No. 98 Civ. 8075(JGK), 2000 WL 223833 at *9 (S.D.N.Y. Feb.25, 2000), aff'd, No. 00-7381, 2000 WL 1678777 (2d Cir. Nov.8, 2000). Our holding is also in accord with a number of other courts to rule on this issue. See, e.g., Hudson Hotels Corp. v. Choice Hotels, Int'l, 995 F.2d 1173, 1178 (2d Cir.1993) (opining that novelty is a mixed question of law and fact), abrogated on other grounds by Nadel, 208 F.3d 368; Official Airlines Schedule Info. Serv., Inc. v. E. Air Lines, Inc., 333 F.2d 672, 674 [ (5th Cir. 1964) ] (holding as a matter of law that idea was not novel); Wrench LLC v. Taco Bell Corp., 51 F.Supp.2d 840 (W.D.Mich.1999) (same); Phillips v. Avis, Inc., No. 95 C 1566, 1995 WL 417587, at *2 (N.D.Ill. July 13, 1995) (holding that determination of whether a trade secret is novel or original is a mixed question of fact and law); Weitzenkorn v. Lesser, 40 Cal.2d 778, 256 P.2d 947, 954 (1953) (holding that determination of novelty is a question of law); cf. Oasis Music, Inc. v. 900 U.S.A., Inc., 161 Misc.2d 627, 614 N.Y.S.2d 878 (1994) (holding that whether idea is sufficiently novel or original to merit protection under New York law is question amenable to summary judgment). But see All Pro Sports Camp, Inc. v. Walt Disney Co., 727 So.2d 363, 368 (Fla.Dist.Ct.App. 1999) (holding that whether an idea is novel is a factual question); G.D. Searle & Co. v. Philips-Miller & Assocs., Inc., 836 F.Supp. 520, 527 (N.D.Ill.1993) (same); Murray v. Bank One, Columbus, N.A., 64 Ohio App.3d 784, 582 N.E.2d 1124, 1128-29 (1990) (same); Wilson v. Barton & Ludwig, Inc., 163 Ga.App. 721, 296 S.E.2d 74, 78 (1982) (same). Even courts holding that the question is a factual one have not hesitated to grant summary judgment on the basis of lack of novelty when the underlying facts do not support a finding of novelty. See, e.g., Wilson, 296 S.E.2d at 78. Therefore, a court should not hesitate to make a determination as to an idea's novelty unless material facts underlying the issue of novelty are in dispute.
We agree with Duffy's, analysis that the ultimate determination of whether an idea is novel is a question of law for the court. In addition, because there were no material facts underlying the issue of novelty in dispute, summary judgment on the basis of lack of novelty was appropriate.

IX.
Plaintiff asserts that summary judgment was improper because novelty should not be required for express contract situations for ideas when it is not required for trade secrets. This argument is based upon the fact that New York trade secret law follows New York idea submission law in requiring the same level of novelty, if any.
*922 Thus, plaintiff reasons that because New Jersey trade secret law does not require novelty for an express contract, New Jersey idea submission law should also not require novelty for an express contract.
It is true that New Jersey trade secret law does not require novelty. See Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 636-637, 542 A.2d 879 (1988) (quoting Restatement of Torts § 757 comment b (1939)). Accord Sun Dial Corp. v. Rideout, 16 N.J. 252, 257, 108 A.2d 442 (1954) (addressing the specifics needed for a trade secret claim, there was no discussion of misappropriation of an idea). In Rycoline Prods., Inc. v. Walsh, 334 N.J.Super. 62, 75-76, 756 A.2d 1047 (App.Div.), certif. denied, 165 N.J. 678, 762 A.2d 659 (2000), we stated that "only a very minimal novelty requirement is imposed for a trade secret." However, there is no reason that New Jersey law on misappropriation of ideas must require the same level of novelty as trade secret law.
Platinum Mgmt., Inc. v. Dahms, 285 N.J.Super. 274, 282, 666 A.2d 1028 (Law Div.1995), relied on by plaintiff, is inapposite. That case involved a claim that former employees now working for a competitor misappropriated confidential information that included sales strategy, customer identities, and pricing policy. However, in relying upon this case, plaintiff relies on a quotation out of context. The misappropriated information in Platinum Mgmt. was not the misappropriation of an idea that was presented to an employer, but rather it included material such as confidential customer lists that employees allegedly took from the employer. These actions fell under a claim of breach of a non-competition restrictive covenant. Id. at 293-303, 666 A.2d 1028.
To support his statement that misappropriated information need not rise to the level of the usual trade secret, the judge in Platinum Mgmt., id. at 295, 666 A.2d 1028, cited Zippertubing Co. v. Teleflex Inc., 757 F.2d 1401, 1407-1410 (3d Cir. 1985). However, Zippertubing addressed a claim of interference with a prospective advantage. Id. at 1406-1412. There was no discussion of misappropriation of an idea.
Thus, the only New Jersey case that addresses misappropriation of an idea and novelty is Flemming, supra (107 N.J.Super. at 317-320, 258 A.2d 153), where the judge required that the plaintiff establish that the idea was novel. Misappropriation of ideas is a separate area of law from both patent law and trade secret law.

X.
We also reject plaintiff's claim that summary judgment was improper because the judge did not discuss whether his ideas might constitute trade secrets. Plaintiff's concept and product idea fails to meet the definition of a trade secret.
Plaintiff relies solely on the definition of "trade secret" in the Uniform Trade Secrets Act § 1(4), 14 U.L.A. 438 (1990). Although the Act has been adopted by forty-three states, New Jersey is not one of them (see chart at 14 U.L.A. 163 (Supp.2000)). No New Jersey case or statute supports plaintiff's position. Ingersoll-Rand Co. v. Ciavatta, supra (110 N.J. at 636-637, 542 A.2d 879) (quoting Restatement of Torts § 757 comment b (1939)), defined trade secret. However, the definition of trade secret does not include a marketing concept or a new product idea. Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173 (2d Cir.1993); Richter v. Westab, Inc., supra (529 F.2d at 897-903 (6th Cir.1976), and 2 R. Milgrim, *923 Milgrim on Trade Secrets § 8.03 at 8-31 (1992).
In Richter, supra (529 F.2d at 900), the court stated that under Ohio law,[4]
[t]his definition does not include a marketing concept or a new product idea. Trade secret law is designed to protect a continuing competitive advantage, which a company enjoys due to confidential information it possesses, from destruction due to disclosure by a departed former employee. A marketing concept does not by confidentiality create a continuing competitive advantage because once it is implemented it is exposed for the world to see and for competitors to legally imitate.
Plaintiff's idea for Mural in a Can and his broad concept of marketing materials for murals for the masses are not trade secrets.

XI.
For the first time on appeal, plaintiff argues that Judge Yannotti erred by not considering the corporate receipt doctrine. Because this issue was not raised below, plaintiff must show plain error, that is error "clearly capable of producing an unjust result." R. 2:10-2. In addition, there is no discussion of the corporate receipt doctrine in any reported New Jersey case, so there is no indication that this doctrine is, or should be, recognized in New Jersey.
Plaintiff's entire argument is based on Bevan v. Columbia Broadcasting Sys., Inc., 329 F.Supp. 601, 609 (S.D.N.Y.1971). He claims that under the corporate receipt doctrine the jury could infer that Singer saw and rejected plaintiff's proposal and that just about everything else in the case flows from this inference.
In Bevan, the plaintiffs mailed a "presentation" of a proposed "Stalag 17" television series, based on their copy-righted play that had also been made into a motion picture, to James Aubrey, the President of Columbia Broadcasting System (CBS). Soon thereafter CBS developed the television series "Hogan's Heroes," which the plaintiffs alleged infringed their copyrighted work. Id. at 602-604. During the development of this series, Aubrey attended a series of pre-production conferences, at which the writers and developers of Hogan's Heroes were present. Id. at 603-604. Thus, the plaintiffs claimed that an executive with responsibility for the allegedly infringing work not only had an opportunity to view the work, but also participated in meetings regarding the defendant's work in which he could have provided creative comments or suggestions. Id. at 609. Given the nature of the relationship between the intermediary and the purported copier and the nature of their contacts, the "bare denials of knowledge" by the writers and developers of Hogan's Heroes were insufficient to take the access question from the jury. Id. at 610.
Bevan differs from the situation here because it is a copyright infringement case. No reported idea-misappropriation cases discuss the corporate receipt doctrine. Proving access is an element of a plaintiff's claim of copyright infringement. *924 A plaintiff must show ownership of a copyright and unauthorized copying of the copyright. Dimmie v. Carey, 88 F.Supp.2d 142, 144 (S.D.N.Y.2000). Unauthorized copying can be shown either by direct or indirect evidence, such as proof that the defendant had a reasonable possibility of access to the work combined with a showing of substantial similarities between the plaintiff's work and the defendant's work. Id. at 145. These elements of a copyright infringement case are not identical to the elements of idea misappropriation.
While Smith v. Little, Brown & Co., 245 F.Supp. 451, 458 (S.D.N.Y.1965), aff'd, 360 F.2d 928 (2d Cir.1966), came to a similar conclusion as Bevan, the holding in Bevan has been rejected or criticized by a number of other courts. In Meta-Film Assocs., Inc. v. MCA, Inc., 586 F.Supp. 1346, 1356-1357 (C.D.Cal.1984), the court discussed the corporate receipt doctrine and the two cases, and rejected the doctrine; however, the facts in Meta-Film are distinguishable from Bevan and Smith. The Meta-Film court stated:
This court is of the view that where, as here, there is little, if any, nexus between the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work, and where the defendant presents uncontroverted evidence negating transmission of the plaintiff's work (any part of which, if true, would refute plaintiff's case), the plaintiff must show something more than that he sent his work to a director who was under contract to the defendant and had an office on the defendant's lot. The cases cited by the plaintiff do not conflict with this view. As discussed above, the key feature present in these cases [such as Bevan and Smith] was the close relationship linking the intermediary and the alleged copier, which in each case went far beyond the simple fact that they shared a common employer. The soundness of this position is counseled by the realities of the business in which both plaintiff and defendants were engaged. In such a business, countless unsolicited scripts are submitted to numbers of individuals on studio lots every day. Under these circumstances, it is clearly unreasonable to attribute the knowledge of any one individualespecially a non-employee to every other individual just because they occupy offices on the same studio lot. To the extent that any case suggests a contrary resultthat is, that "bare corporate receipt" is sufficient as a matter of law to preclude a finding of non-access, see Bevan, 329 F.Supp. at 609 610-the court rejects such reasoning.

[Id. at 1357-1358 (footnote omitted).]
Similarly, Dimmie v. Carey, supra (88 F.Supp.2d at 147), stated that "Bevan is (arguably) out-dated; more recent cases have come to a different conclusion in similar circumstances."
Hence, Bevan is distinguishable because access as an element is not developed in idea-misappropriation cases as it is in copyright infringement cases. Here, the proposal was given to Bishop with only plaintiff's claim that Bishop stated that he was going to give it to the "higher ups." Further, Judge Yannotti concluded that plaintiff's idea was not novel and that plaintiff's proposal and defendant's product were not similar. Thus, even if the corporate receipt doctrine could have been considered to show that Singer had access, plaintiff's claim still fails based on novelty *925 and the lack of similarity to Crayola Paints.

XII.
Finally, this is not the proper forum for plaintiff's claims that Judge Yannotti erred by allowing defendant to bring an amended defamation claim because the defamation claim was severed from this case. Likewise, plaintiff's claim that defendant's defamation and abuse of process claims are barred by the entire controversy doctrine is not addressed because these claims were severed from this case.
In addition to plaintiff's claims in points 17 through 19, we also do not address plaintiff's claim in point 2 that the defamation claim should have been dismissed for failure to state a claim because the claim was already dismissed from this case.
The abuse of process claim has been severed from this lawsuit and dismissed in the separate action, so it is not only not before us, but is also moot.
On the cross-appeal we note that although the record was sufficient for Judge Yannotti to ultimately grant summary judgment in favor of defendant, this does not mean that plaintiff's claims were frivolous.
Affirmed as to the appeal and cross-appeal.
NOTES
[1] Defendant refers to Benjamin Moore & Co. except where otherwise indicated.
[2] Following this order, a separate action was filed.
[3] "The question of novelty is a question of fact for the jury and it is not a question upon which there is likely to be uniformity of thought in every given factual context." Tate, supra (403 N.W.2d at 671).
[4] Richter also relied on the same definition of "trade secret" in Ingersoll, supra (110 N.J. at 636-637, 542 A.2d 879). The Hudson Hotels court, applying New York law, also relied on the same Restatement definition of trade secret and the above citation to Milgrim's treatise, and stated that a trade secret does not include a marketing concept or new product idea. 995 F.2d at 1176.