107 N.J. Super. 311 (1969)
258 A.2d 153
C.P. FLEMMING, PLAINTIFF,
v.
RONSON CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
October 28, 1969.
*313 Mr. Harry Heher, Jr., attorney for plaintiff.
Mr. Lewis Eslinger, of the New York Bar, appeared for defendant (Messrs. Weinberg & Manoff, attorneys).
SEIDMAN, J.C.C. (temporarily assigned).
Plaintiff, a retired dental technician, claiming that defendant Ronson Corporation wrongfully appropriated a new product idea for an artificial candle he had conceived and submitted, seeks damages for breach of an express or implied contract and by reason of the alleged resultant unjust enrichment of defendant. Since the trial, limited to the issue of liability, was without a jury, it is now necessary for the court to state its findings of facts and conclusions of law thereon. R. 1:7-4.
The lawsuit is the outgrowth of an admitted exchange of correspondence between the parties beginning March 7, 1955, when plaintiff, who testified he had not seen the concept elsewhere, sent the following letter to defendant:
I am writing you in reference to an idea I have for a metal product.
As far as I am able to determine it has never appeared on the market.
It is both useful and ornamental.
It is an item which could be used in every household.
If you would like me to submit same to you, please advise.
Receipt of the letter was acknowledged by Ronson's assistant to the president, who informed Flemming that it had been forwarded to the research and development department at their Stroudsburg, Pa., plant. Warren I. Nissen, a Ronson research and product engineer, replied on March 12, 1955:
Thank you for your letter of March 7, 1955. We are always pleased to receive suggestions and ideas for new products or improvements of our products.
If you care to forward drawings, descriptions and/or working models, we will be most glad to evaluate same and report to you regarding our further interest. Please be assured that all materials *314 submitted will be carefully handled and returned to you if we should not accept your proposal.
If your proposal proves to be of further interest to us, we will contact you for the purpose of making such further arrangement as may be required.
Two days later plaintiff responded by furnishing these details of his idea:
It consists of a metal candle to be used with liquid or compressed gas fuel.
It could be made up in the following finishes. Chrome, polished brass, polished copper and embossed Sterling, with or without a matching holder. It could be made plain or a twisted design.
It should have a removable head which should be used to avoid evaporation of fuel or gas leakage when not in use.
The removable head should be made to slide over the top of candle when not in use.
It could be made in various lengths.
The letter included sketches depicting three narrow, flattopped cylinders, each with a protruding wick, in plain, twisted and embossed designs; and a conical, removable head topped by a dummy wick. It was indicated that the candle would contain liquid fuel into which a glass wool wick would be inserted. One sketch showed the removable head affixed to the top of the candle; another, a screw opening at the bottom for filling the candle with fuel.
On March 15, 1955 Nissen wrote advising that "We have received your submission and find that we are not interested in it at the present time." Concededly, the letter containing the drawings was not returned to Flemming, and there was no further correspondence between the parties until early in 1963 when Flemming, who had seen an advertisement of a Ronson Varaflame gas candle in a New York newspaper on November 4, 1962, instructed his attorney to press a claim for the alleged appropriation of his idea. The claim was rejected; and in March 1968, after engaging other counsel, Flemming filed his complaint.
Flemming contends that the Ronson Varaflame gas candle, which defendant admits it placed on the market in 1962, *315 embodies the salient features of his new product idea; and he charges that Ronson appropriated to its own use the idea which had been disclosed to it in confidence, in violation of a contract both express and implied. Ronson denies the existence of a contract and asserts that its Varaflame gas candle was independently developed without resort to plaintiff's submission.
It is clear at the outset that even if it should be found that Ronson accepted and used Flemming's concept, no express contract arose. Ronson did not promise to pay for the mere submission of an idea. All that can be derived from the correspondence is an invitation to Flemming to submit details for evaluation, coupled with an undertaking to contact him for further arrangements should the proposal be of interest, as well as an assurance that all materials submitted would be returned if the submission was not accepted. The March 15 letter from Ronson stated its lack of interest at the time. The minds of the parties never met on a proposed sale or purchase of plaintiff's idea. Van Name v. Federal Deposit Ins. Corp., 130 N.J. Eq. 433 (Ch. 1941), affirmed 132 N.J. Eq. 302 (E. & A. 1942); Leitner v. Braen, 51 N.J. Super. 31 (App. Div. 1958). The law will not imply a promise on the part of a person against his own express declaration. Lueddeke v. Chevrolet Motor Co., 70 F.2d 345 (8 Cir. 1934).
Where there has been an unsolicited submission of an idea, as here, the question which arises is whether, on the facts presented, the recipient is liable, if at all, by reason of a quasi-contractual obligation based on the doctrine of unjust enrichment. An idea, as distinguished from the copyrighted contents of a book or a patented device or process, is accorded no protection in the law unless it is acquired and used in such circumstances that the law will imply a contractual or fiduciary relationship between the parties. J. Irizarry y Puente v. Pres. & F. of Harv. Col., 248 F.2d 799 (1 Cir. 1957), cert. den. 356 U.S. 947, 78 S.Ct. 785, 2 L.ed.2d 822 (1958), reh. den. 356 U.S. 969. *316 78 S.Ct. 1009, 2 L.ed.2d 1076 (1958). Generally, one who receives a benefit which it is unjust for him to retain ought to make restitution or pay the value of the benefit to the party entitled thereto. William A. Meier Glass Co. v. Anchor Hocking Glass Corp., 95 F. Supp. 264 (D.C. Pa. 1951); Jennings v. McCall Corporation, 224 F. Supp. 919 (D.C. Mo. 1963); 1 Williston, Contracts (rev. ed. 1938), § 3, p. 9. See also, Binder Realty Corp. v. City of Newark, 19 N.J. Misc. 624, 22 A.2d 359 (Sup. Ct. 1941); Houghland v. Houghland, 19 N.J. Misc. 474, 21 A.2d 215 (Ch. 1941).
The parties have staked out their respective positions on this issue. Plaintiff argues that submission of a new product idea in writing and in confidence to a manufacturing corporation by an outsider, not necessarily involving any element of novelty or invention, creates, when accepted, a binding quasi-contract to pay reasonable compensation for the submission and a right to relief for unjust enrichment. On the other hand, defendant asserts that before there can be recovery for the misappropriation of a confidential disclosure it must appear that the idea submitted had novelty, that it was concrete and usable rather than abstract or vague, and that the idea was used by the recipient.
Defendant contends plaintiff's idea lacks concreteness. Several cases are cited in support of the proposition that a mere abstract idea, incapable of material embodiment, cannot be the subject of a claim for conversion and misappropriation; one of which, Haskins v. Ryan, 71 N.J. Eq. 575 (Ch. 1906), involved the alleged utilization of the claimant's plan for combining a number of white lead industries into one company. Another deals with an idea for a motion picture, O'Brien v. R K O Radio Pictures, Inc., 68 F. Supp. 13 (D.C.N.Y. 1946). These cases, however, are inapposite. It is unnecessary to consider whether an abstract idea can be the basis of a contract. Haskins v. Ryan, supra, but cf. Liggett & Myers Tobacco Co. v. Meyer, 101 Ind. App. 420, 194 N.E. 206 (App. Ct. 1935). The concept submitted by Flemming is not an abstract one in the sense that it is *317 incapable of physical form. Rudimentary as it is, the idea can be transformed into a product. It is, to that extent, concrete and usable. For cases involving ideas held not to be concrete, see Thomas v. R.J. Reynolds Tobacco Co., 350 Pa. 262, 38 A.2d 61, 157 A.L.R. 1432 (Sup. Ct. 1944), (idea for cigarette advertising); Williamson v. New York Central R. Co., 258 App. Div. 226, 16 N.Y.S.2d 217 (App. Div. 1939), (plan for miniature railroad); Alberts v. Remington Rand, Inc., 175 Misc. 486, 23 N.Y.S.2d 892 (Sup. Ct. 1940), (suggested use of charts or graphs); Plus Promotions v. R.C.A. Mfg. Co., 49 F. Supp. 116 (D.C.N.Y. 1943), (plan for making recordings)
Ronson urges that Flemming's submission lacked novelty and was incomplete in form and detail; consequently, he had nothing to offer. It has been held that where a person communicates a novel idea to another with the intention that the latter may use the idea and compensate him for such use, the other party is liable for such use and must pay compensation if he actually appropriates the idea and employs it in connection with his own activities. Trenton Industries v. A.E. Peterson Mfg. Co., 165 F. Supp. 523 (D.C. Cal. 1958); see also, Matarese v. Moore-McCormack Lines, Inc., 158 F.2d 631, 170 A.L.R. 440 (2 Cir.1946). A plaintiff is required to establish as a prerequisite to relief that (1) the idea was novel; (2) it was made in confidence, and (3) it was adopted and made use of. Mitchell Novelty Co. v. United Mfg. Co., 199 F.2d 462 (7 Cir.1952); De Filippis v. Chrysler Corp., 53 F. Supp. 977 (D.C.N.Y. 1944); Official Airline Sched. Inform. Serv., Inc. v. Eastern Airlines, 333 F.2d 672 (5 Cir.1964). Although novelty has been considered significant in these and other cases, e.g., Stevens v. Continental Can Co., 308 F.2d 100 (6 Cir.1962); Smoley v. New Jersey Zinc Co., 24 F. Supp. 294 (D.C.N.J. 1938); Lueddecke v. Chevrolet Motor Co., supra, this element is more important for its evidentiary value than for substantive quality. See Havighurst, "The Right to Compensation for an Idea," 49 N.W.U.L. Rev. *318 295 (1954). In other words, where the issue is whether one's idea has in fact been used by another, similarities between the submission and the ultimate product may justify the factual inference that one was copied from the other. International Industries, Inc. v. Warren Petroleum Corp., 99 F. Supp. 907 (D.C. Del. 1951). If the concept submitted is unique, or if there are many points of likeness, the inference is strengthened. On the other hand, a lack of novelty or the existence of many dissimilar features will support a denial that the idea was used by the recipient.
The issue in the present case is thus narrowed to a determination of whether Ronson actually copied or used Flemming's idea, or was aided by it in developing its own product. Plaintiff maintains that because the Ronson Varaflame candle embodies the salient features of his concept, it follows that Ronson utilized his idea and is now estopped to assert a contrary position. Defendant denies those assertions.
The court finds from the evidence that, despite a superficial resemblance between Flemming's sketches and the Varaflame candle, the similarity is mainly with respect to shape. Not surprisingly, each looks like a long, tapered candle of the kind used for table decoration. The Flemming candle operates on the basic principle of a wick inserted into liquid fuel, no different from an ordinary cigarette lighter. Although there is a suggestion that compressed gas can also be used, no explanatory details are furnished. The Ronson product, designed to operate on butane gas, is not a simple device; it consists of many component parts, including an outer shell or sleeve, an inner shell, a tipped nozzle and liner, a base plug, cams, springs, seals and washers, and, particularly, an inlet valve assembly and a burner valve assembly, each of which is a small but complex unit.
The court finds further that even though Flemming's concept may have been new to him, it was not a novel one. At best, what Flemming had in mind was a different application of a long-established principle. As far back as 1871 a *319 patent was issued for a cylindrical, "hydrocarbon candle" consisting of a filling of sponge, cotton or other material adapted to absorbing liquid hydrocarbon, and a wick projecting from an opening at the top. The record reveals a number of later patents, each primarily based on the principle of a shell or casing fluid, and a wick. One of these, patented in 1939 by one Howard and strikingly similar in shape and concept to Flemming's idea, has a tapered shell containing a nonfibrous material for the absorption of such fluids as hydrocarbon oils, as well as a protruding wick. It is also noted that a competitive product similar to Ronson's was on the market in 1961.
It is evident that the features of Flemming's artificial candle which may also be found in the Ronson product are not so novel as to create the inference that defendant utilized or copied plaintiff's idea.
In the case of Boop v. Ford Motor Company, 177 F. Supp. 522 (D.C. Ind. 1959), aff'd 278 F.2d 197 (7 Cir.1960), plaintiff alleged that he had developed certain new ideas for mounting a corn picker on a tractor; that these were revealed to a representative of defendant, and that thereafter Ford came out with a mounted picker which incorporated his ideas. The court rejected the claim, noting that although plaintiff's idea was admittedly similar in some respects to the Ford picker, this was insufficient, since all mounted pickers of necessity had to be alike in many respects. For plaintiff to prevail, it was held, it must appear that the idea utilized by Ford came from him. A mere showing of similarity did not fulfill this requirement, particularly when such similarities as existed were found in patented picker designs in existence prior to plaintiff's and thus were matters in the domain of public knowledge. See also Gilbert v. General Motors Corporation, 41 F. Supp. 525 (D.C.N.Y. 1941).
From the evidence adduced at the time of trial, the court finds the following additional facts: Although Ronson's research and development personnel had discussed gas-fueled *320 artificial candles over the years, the lack of dependable filler and burner valves precluded further planning. Liquid-fueled candles were not deemed feasible by reason of the limited amount of fuel that could be stored. A gas lighter developed in 1948 or 1949, using throwaway cartridges, was discontinued shortly thereafter because of the failure of the burner valve. In 1956, as the result of the efforts of a Swiss inventor named Zellweager, with whom an Englishman, Goddard, an employee of Ronson's British branch, worked closely, suitable inlet and burner valves were perfected which enabled Ronson to develop, at first, a Varaflame lighter and then other products, including the gas candle in question. The Flemming letter, which had been filed away, played no part in the development of the candle and, in fact, was not seen again until after the institution of suit. When production of the gas candle was planned in 1958, Ronson's staff designer was directed to design it. His studies of the shapes and configurations of wax candles led to the Ronson Varaflame candle ultimately marketed.
The court concludes that Ronson neither appropriated the idea submitted by plaintiff nor utilized his concept in the development of its Varaflame candle.
For the reasons set forth herein, a judgment dismissing the complaint should be entered in favor of the defendant.