Gary AHLERT, d/b/a Creative Group Marketing, Plaintiff,

v.

HASBRO, INC. and Larami Ltd., Defendants.

Civil Action No. 02–1986 (JEI).

United States District Court, D. New Jersey.

July 15, 2004.

Horowitz, Greener & Stengel, by Barry W. Horowitz, Monroe Township, NJ, for Plaintiff.

By Gary Rosen, Patrick Madamba, Jr., Philadelphia, PA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

IRENAS, Senior District Judge.

This matter having appeared before the Court upon Defendants' Motion for Summary Judgment, the Court having reviewed the submissions of the parties, and it appearing that:

1. Plaintiff Gary Ahlert ("Plaintiff"), d/b/a Creative Group Marketing, filed a complaint with this Court alleging that Defendants Hasbro, Inc. ("Hasbro") and Larami Ltd. ("Larami")[1] (collectively, the "Defendants"), improperly appropriated his trade secret, a design concept for a water gun, called the "Water Rat," which Plaintiff was marketing for his client and the gun's inventor, Gary Ross. Plaintiff claims that Defendants rejected Ross' Water Rat design and then subsequently incorporated it into a new line of water guns.

2. In the early 1990s, Larami enjoyed great commercial success with a line of pump action water guns called Super Soakers. The original Super Soaker guns required users to manually pump air into the gun's water tank, allowing the firing of a pressurized stream of water. Bruce D'Andrade ("D'Andrade") was a co-inventor of the original Super Soaker and owner of Professional Prototypes, an independent design and development firm which had been working with Larami since 1986.[2]

---

1. Larami has been a wholly-owned subsidiary of Hasbro since 1995.

2. Subsequent to the events referred to in this case, but prior to the filing of Plaintiff's complaint, Bruce D'Andrade passed away. Mary Ann D'Andrade, as executrix of Bruce D'Andrade's estate, was originally named as a defendant in this case, but was dismissed from the case in an Order dated May 17, 2004.

3. In early 1996, D'Andrade and the design team at Professional Prototypes began work on the next generation of water gun technology. Through a system of rubber tubing inside the gun's water tank (a "bladder" system), the team was able to achieve a continuous pressurized stream of water without manually pumping air into the tank. Beginning in 1997, Larami used the bladders designed by Professional Prototypes in a new line of Constant Pressure System ("CPS") water guns. The CPS guns were marketed and sold in 1997, 1998 and 1999. Beginning on June 2, 1998, the United States Patent and Trademark Office issued several patents to D'Andrade for various components of the new CPS water guns.

4. Plaintiff Gary Ahlert is an agent for inventors of toy and game products. On or about September 6, 1994, he entered into a written Representation Agreement with Gary Ross, an Oklahoma resident and recreational inventor. One of the products which Plaintiff agreed to market for Ross was the Water Rat, a water gun which employed a bladder system similar to that subsequently developed in Larami's CPS water guns.

5. On or about September 28, 1994, three years before Larami first marketed the CPS water guns, Plaintiff met with representatives of Larami at their Mount Laurel, New Jersey offices. At the meeting, Plaintiff presented the Water Rat water gun to the Larami representatives and its technology was discussed. The prototype remained with Larami and Plaintiff subsequently sent several more prototypes and a technical drawing of the Water Rat to Larami offices.

6. In November 1994, Larami rejected the Water Rat. The prototypes, some di-sassembled, were returned to Plaintiff in December 1994 or January 1995. Following this rejection by Larami, Plaintiff reassigned marketing responsibilities for the Water Rat to U.S. Consumer Products Corporation ("USCPC"). USCPC made several more unsuccessful attempts to interest Hasbro and Larami in the Water Rat. Following the final submission in March of 1997, Larami rejected the concept in writing, stating that the Water Rat was too similar to its CPS system which was already being marketed.

7. On April 25, 2002, four years after Larami first began marketing their CPS water guns, Plaintiff filed a complaint with this Court. Plaintiff alleges that Defendants have: (1) stolen his trade secret (the Water Rat); (2) breached a contract regarding the disclosure of his trade secret; and (3) practiced unfair competition. Plaintiff further requests that the Court: (1) issue a declaratory judgment as to the ownership of certain patents allegedly relating to the trade secret; (2) order Defendants to disgorge any profit gained from use of his trade secret; and (3) issue an injunction against Defendants' further use of the disputed patents.

8. On March 23, 2004, Defendants moved for summary judgment. They argue: (1) that Plaintiff's claims are barred by laches; (2) that Plaintiff's claims are barred due to spoliation of evidence; and (3) that there is no evidence that Defendants used the Water Rat concept in the development of their CPS line.[3]

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiff is a New York resident whose company is based in Connecticut. Larami is a New Jersey corporation and a wholly-

---

**3.** Though Defendants' arguments with respect to spoilation of evidence and laches may have merit, the Court need not address them for purposes of this motion. Rather, the Court will decide the motion on the merits, and singly address Defendants' opposition to Plaintiff's trade secret claim.

owned subsidiary of Hasbro, a Rhode Island corporation. The Court will grant Defendants' motion for summary judgment.

10. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986) (quoting Fed.R.Civ.P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir. 1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986).

■■■ 11. Initially, there is a choice of law question to be resolved in this case. Connecticut, as the headquarters of Plaintiff's business, Oklahoma, as the original home of the Water Rat, and New Jersey, where Larami is located, all have significant contact with the present dispute. As a federal court sitting in diversity in the State of New Jersey, this Court must apply New Jersey's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfr.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Where there is an actual conflict between the applicable laws of potential states, New Jersey utilizes a governmental inter-

est test. The governmental interest test requires that the Court first identify the policies underlying the laws of each interested jurisdiction, and then consider the contacts that each jurisdiction has with the parties. The determinative law is that of the state with the greatest interest in governing the particular issues. *Henry v. Richardson–Merrell, Inc.,* 508 F.2d 28, 30 (3d Cir.1975).

12. The interested jurisdictions would apply different laws to the present dispute. Connecticut and Oklahoma have each adopted the Uniform Trade Secret Act ("UTSA") while New Jersey still relies on the common law.[4] Therefore, the Court must consider the contacts that each state has with the parties. On this basis, although Plaintiff's business is based in Connecticut and the Water Rat originated in Oklahoma, New Jersey clearly has the strongest connection to the case. Larami is not only located in New Jersey, but Plaintiff's idea was submitted in New Jersey, and any alleged wrongdoing would have taken place there as well. On balance, therefore, New Jersey has the greatest interest in governing the outcome of this case and the Court will apply its law.

■■ 13. Although the parties have characterized this litigation as involving a trade secret (the Water Rat design), it appears that this dispute does not, in fact, involve a trade secret. New Jersey looks to the 1939 *Restatement of Torts* for the definition of a trade secret. *See Sun Dial Corp. v. Rideout,* 29 N.J.Super. 361, 102 A.2d 90, 92 (1954); *Nat'l. Tile Bd. Corp. v. Panelboard Mfg. Co.,* 27 N.J.Super. 348, 99 A.2d 440, 441 (1953). The *Restatement* defines a trade secret as, "any formula,

---

4. This difference will be particularly important with regard to the legal definition of a trade secret. Plaintiff's Water Rat does not qualify as a trade secret under New Jersey's common law definition, but it may under the UTSA. In the field of submission-of-idea law, there is uncertainty as to whether or not the UTSA applies. The few cases deciding this issue have gone both ways, and most UTSA jurisdictions have yet to decide the issue. *See* 1 ROGER R. MILGRIM, MILGRIM ON TRADE. SECRETS 9.05[4] (2004).

pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Restatement of Torts* 757, *comment b* (1939).

■ 14. Plaintiff's Water Rat does not fall under this definition. While the Water Rat was an innovative device, Plaintiff did not actually *use* it in his business. Plaintiff facilitates the submission of ideas from inventors to toy manufacturers—he is not engaged in the business of water gun manufacture or sale. When trade secret claims do not meet the *Restatement's* "use in business" requirement, they are treated as submission-of-idea cases.[5] 1 ROGER R. MILGRIM, MILGRIM ON TRADE SECRETS 9.05, n. 1 (2004). As such, Plaintiff's trade secret misappropriation claim is properly re-characterized as a submission-of-idea claim.

■ 15. In New Jersey, trade secret claims and submission-of-idea claims involve different circumstances requiring different legal analyses. Trade secret misappropriation cases commonly feature a discharged employee as the vehicle transporting a disputed idea from one company to another. New Jersey courts apply a five-part test to those cases. *See Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424 (3d Cir.1982); *Rycoline Prod., Inc. v. Walsh*, 334 N.J.Super. 62, 756 A.2d 1047 (2000). Submission-of-idea cases, as in the instant case, generally feature independent inventors accusing a potential

producer or manufacturer of idea theft. New Jersey courts offer the following analytical framework for such cases:

It has been held that where a person communicates a novel idea to another [in confidence] with the intention that the latter may use the idea and compensate him for such use, the other party is liable for such use and must pay compensation if he actually appropriates the idea and employs it in connection with his own activities.

*Johnson v. Benjamin Moore & Co.*, 347 N.J.Super. 71, 788 A.2d 906, 914 (2002); *quoting Flemming v. Ronson Corp.*, 107 N.J.Super. 311, 258 A.2d 153, 157 (1969).[6]

16. The parties do not dispute that Plaintiff's idea for the Water Rat was novel—indeed, no CPS water gun had been previously developed. Therefore, the remaining issues are: (1) whether Plaintiff submitted his idea to Defendants in confidence and with the intention of being compensated; and (2) whether Defendants appropriated the idea and employed it in connection with their own activities.

■ 17. Based on the signed agreement between Plaintiff and Defendants, there is no doubt that Plaintiff submitted his idea to Larami in confidence and with the intent of being compensated. On September 28, 1994, before introducing the Water Rat to Larami, Plaintiff was given an "Agreement for Submission of Outside Inventions or Ideas" ("Submission Agreement") for signature.[7] In the Submission

---

5. Submission-of-ideas claims can be brought under either a tort or contract theory of law; the former theory imposes a more difficult burden on a plaintiff than the latter. *Id.* at 9.05[3]. Here, Plaintiff's submission to Defendants was governed by a signed agreement which discussed confidentiality of a submitted idea. (Def's.Ex.34). Therefore, Plaintiff brings his submission-of-idea claim under the contract theory.

6. The *Johnson* opinion, quoting *Flemming*, sets forth a three-part test for evaluating sub-

mission-of-ideas claims: a plaintiff must establish (1) that his idea was novel; (2) that the disclosure was made in confidence; and (3) the idea was adopted and made use of. *Johnson*, 788 A.2d at 914. *See also Flemming*, 258 A.2d at 157 (citing cases).

7. It is important to note that the Submission Agreement specifically addresses the very disclosure issues raised by Plaintiff in this case. Larami states at the outset of the Submission Agreement that it is "engaged in the develop-

Agreement, Larami pledged to "maintain the submission in a manner reasonably calculated to prevent disclosure to the third parties or misappropriation." (Def's.Ex.34). Regarding compensation, Larami expressed that it was "willing to pay fees or royalties on accepted items according to a formal contract." *Id.*

18. However, Plaintiff cannot show that Defendants subsequently appropriated his idea and employed it in connection with their own activities. Plaintiff's claim is deficient on both the "appropriation" and "employment" counts. First, Plaintiff cannot establish with any certainty an inappropriate disclosure of his Water Rat idea by Larami to Professional Prototypes or any other toy designer. Secondly, Plaintiff cannot refute Defendants' account that they independently developed their own CPS water gun.

19. Plaintiff's allegations regarding the actual appropriation of the Water Rat design are pure speculation. Plaintiff believes that Myung Song, the President and General Manager of Larami, was in possession of the Water Rat design, and that Song "must have" transmitted the design to Bruce D'Andrade at Professional Prototypes. (Def's. Br. at 13). However, in support of this notion, Plaintiff cannot conclusively place D'Andrade with Myung Song at any Larami product development meeting, much less a specific meeting or meetings at which the Water Rat submission was discussed. Plaintiff's position is further undercut by Myung Song and Harold Frankel,[8] both of whom assert that an outside inventor would not be present at a Larami product development meeting.[9] There is no evidence of direct disclosure between Myung Song and Bruce D'Andrade specifically, or between Larami and Professional Prototypes generally—and mere proximity is legally insufficient to establish an inference of misappropriation. *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1293–95 (11th Cir.2003).

20. Plaintiff also cannot establish employment by Defendants of the Water Rat design in connection with their own water gun development. On the issue of idea "employment", a compelling record of in-

---

ment of new products and new techniques" and the outside submissions that it receives can be "similar to what [it has] either developed or [has] under development." (Def's.Ex.34). The Submission Agreement, therefore, serves to "avoid any misunderstandings" and is "for the protection of our (Larami's) independently developed ideas." *Id.* To that end, Larami further writes that:

Disclosures made to us do not interfere with our rights to utilize any prior art and any inventions, ideas, patent applications, or other developments which we may now own or hereafter acquire from others related to the same or similar subject matter as that contained in the disclosure.

*Id.* This clause bears strongly on Plaintiff's claim, and supports the notion that Larami and Professional Prototypes were entitled to develop a CPS water gun independently of Plaintiff's submission.

8. Harold Frankel serves as Larami's Director of Inventor Relations.

9. When questioned, Myung Song could not recall whether D'Andrade had attended any product development meetings:

Q: Was Bruce D'Andrade ever at any of these [Larami product development] meetings?

A: Very rarely.

Q: But on occasion?

A: It is possible. I don't recall. But in general, he's not invited.

(Pl's.Ex.5).

Harold Frankel strongly bolsters the notion that outside inventors were not allowed at Larami Product development meetings: "He [D'Andrade] was never at any of our meetings, product meetings, no new product meetings or anything like that. I wouldn't allow it anyway, because he's an outsider. We don't show inventors' products to outsiders." (Def's Rep., Ex. A).

dependent development can indicate that a defendant did not use a plaintiff's idea. *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 567 (3d Cir.2003). Here, Plaintiff cannot refute Defendants' argument that they developed a CPS water gun independent of the Water Rat technology.[10] In addition to offering convincing documentation that they developed a CPS water gun without using Plaintiff's idea (Def's Ex. 43–47), Defendants note that Plaintiff's own expert testified that D'Andrade and Professional Prototypes could have independently developed the CPS bladder system.[11] In fact, when presented with a Professional Prototypes drawing dated February 5, 1996, fully one year after Larami rejected Plaintiff's Water Rat, Plaintiff's expert could not identify a single element of the Water Rat in Professional Prototypes' CPS design. (Def's.Ex.L). Claims of independent de-

velopment are often seen as suspicious when major breakthroughs occur immediately following possible exposure to another idea. *Rycoline Prod.*, 756 A.2d at 1050. However, it is not inconceivable that with over a year's effort, a professional toy developer could independently arrive at a technology that a recreational inventor assembled in his garage.

21. Plaintiff has not refuted Defendants' account of independent development; Plaintiff cannot identify the inappropriate disclosure of his submitted idea with any more specificity than to merely point to a preexisting relationship between Myung Song of Larami and Bruce D'Andrade of Professional Prototypes; and Plaintiff cannot identify any specific element of the Water Rat design which was incorporated into Larami's CPS design. For these reasons, Plaintiff's submission-

---

10. The parties disagree on who properly bears the burden of proof on the issue of independent development. Plaintiff maintains that *Bolt Associates, Inc., v. Alpine Geophysical Associates, Inc.*, 365 F.2d 742, 749 (3d Cir.1966), a New Jersey trade secret case, instructs that a defendant bears the burden of proving that it independently developed its product without using the disputed idea. Defendants, however, point out that *Bolt* does not rely on any New Jersey case law for this proposition. *Bolt* instead relies on a Fourth Circuit opinion from 1935, *Hoeltke v. C.M. Kemp Mfg. Co.*, 80 F.2d 912 (4th Cir.1935). Additionally, there are specific New Jersey trade secret cases which hold that a plaintiff bears the burden of showing that a given product was not independently developed by a defendant. *Merckle v. Johnson & Johnson*, 961 F.Supp. 721, 730 (D.N.J.1997); *Schmidinger v. Welsh*, 243 F.Supp. 852, 864 (D.N.J. 1965), *aff'd in relevant part*, 383 F.2d 455 (3d Cir.1967).

Fortunately, this Court need not presently resolve the confusion over the appropriate burden concerning independent development. *Bolt*, *Merckle* and *Schmidinger* are trade secret cases, but even if trade secret cases bear on burden of proof issues in a submission-of-idea dispute, the Defendants have presented a

record of independent development strong enough to prevail under either the *Bolt* framework or the lesser *Merckle* and *Schmidinger* standard.

11. The relevant deposition excerpts read:

Q: And based on your review of those documents [the record of independent development presented by Larami], did they appear to reflect substantial research, thought and experimentation?

A: Yes, there was substantial experimentation and testing and prototyping that went on.

Q: Did you see anything in those documents that led you to believe that the authors or the people involved in this development were involved in stealing the original ideas of others?

A: I didn't see anything that would lead me to believe that, no.

Q: Did you see anything in those documents which you believe to a reasonable degree of professional certainty could not have been arrived at through independent research, thought and experiment?

A: I believe the concept could have been done independently, yes.
(Def's.Ex.L).

of-idea claim fails, and accordingly, summary judgment is granted to Defendants.

Based on the foregoing,

IT IS, on this 15th day of July, 2004,

ORDERED THAT:

Defendants' Motion for Summary Judgment is GRANTED.