**Bonnie VENT, d/b/a Genesis Creations, Plaintiff,**

v.

**MARS SNACKFOOD US, LLC and Mars, Incorporated, Defendants.**

No. 08 Civ.2538 (SCR).

United States District Court, S.D. New York.

Feb. 5, 2009.

Kevin Thomas Mulhearn, Kevin T. Mulhearn, P.C., Orangeburg, NY, for Plaintiff.

Katherine Gates Lindsey, Kenneth Jerome Brown, R. Hackney Wiegmann, Williams & Connolly LLP, Washington, DC, for Defendants.

## MEMORANDUM DECISION AND ORDER

STEPHEN C. ROBINSON, District Judge.

Bonnie Vent, a citizen of California, filed this action against Mars Snackfood US, LLC, and Mars, Inc. (collectively, "Mars"), corporations that are considered for purposes of diversity jurisdiction citizens of New Jersey and Virginia. Ms. Vent's original Complaint sought recovery for breach of an implied-in-fact contract and unjust enrichment/misappropriation of

idea. In lieu of filing an Answer, Mars moved to dismiss Ms. Vent's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Ms. Vent then filed a timely [1] Amended Complaint, which seeks the same relief but supplements the factual allegations. Mars filed a motion to dismiss the Amended Complaint. In her opposition to Mars's motion to dismiss, Ms. Vent withdraws the implied-in-fact contract claim and agrees with Mars's assertion that New Jersey law controls the remaining misappropriation of idea claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Complaint ("Pl.'s Mem.") at 4.

Oral argument was held on January 6, 2009. Subsequent to the oral argument, the parties filed a joint stipulated allowing this Court to consider Mars's M & M's–Shrek cross-promotion advertisement in adjudicating Mars's motion to dismiss the Amended Complaint. The parties also submitted supplemental memoranda of law addressing the issue of novelty.

For the following reasons, the Court grants Mars's motion to dismiss.

# I

## BACKGROUND

Ms. Vent is a freelance entertainment broker, focusing particularly on actors and actresses from classic television programs. As relevant here, Ms. Vent represented various individuals who starred in the 1960s television program "The Addams Family," including the actors and actress who played Cousin It (Felix Silla), Pugsley (Ken Weatherwax), and Wednesday (Lisa Loring).

In August 2006, Ms. Vent was preparing to help launch the release of the Addams Family DVD Volume 1. She called Claire O'Donnell, a senior marketing buyer for Mars based in New Jersey. During this telephone call, Ms. Vent claims that she "pitched a specific, novel, and concrete idea for a cross-promotion between Addams Family characters and M & M's candies [sic] for Halloween." Am. Compl. ¶ 18. According to the Amended Complaint, "[t]he idea conveyed by [Ms. Vent] to Ms. O'Donnell specifically mentioned the use of animated M & M's characters [sic] with Addams Family characters for a cross-promotion of the two products (M & M's candies and Addams Family DVD)." Am. Compl. ¶ 18. In this conversation, Ms. Vent also told O'Donnell that her clients—Loring, Weatherwax, and Silla— were available to appear in the advertisement. The Amended Complaint does not provide any more details about Ms. Vent's idea, however.

The Amended Complaint alleges that the idea was shared in confidence, although it does not describe any particular statements or actions substantiating this assertion. It also alleges that "a confidential or fiduciary relationship existed between" Ms. Vent and O'Donnell because "the parties did not deal on equal terms." Am. Compl. ¶ 24. Further, the Amended Complaint alleges that Ms. Vent "trusted and relied on Ms. O'Donnell ... to protect her interests" in the marketing idea. Am. Compl. ¶ 24.

---

1. Rule 15(a)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party may amend its pleading once as a matter of course ... before being served with a responsive pleading." In this case at the time that Ms. Vent filed her Amended Complaint, the Mars had not filed an answer; moreover, Mars's motion to dismiss is not considered a pleading, *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir.2007). Ms. Vent was entitled to file an Amended Complaint as a matter of course. *See* Fed. R. Civ. P. 15(a).

The Amended Complaint states that Ms. Vent's idea was "novel and concrete." The idea allegedly was not in use in the entertainment or advertising industries at the time; "showed genuine novelty and invention[ ] and was not merely a clever or useful adaptation of existing knowledge"; was "definite and well-developed (i.e., the specific use of M & M's animated characters with Addams Family characters)"; was "taken [from] existing material [and] common sources and combined and arranged them into a new form"; and was given "a unique application in a different manner and for a different purpose than what previously existed." Am. Compl. ¶ 22. The Amended Complaint concedes, however, that, prior to Ms. Vent's telephone conversation with O'Donnell, Mars had promoted its M & M's products with movie releases and, particularly, with DVDs. Am. Compl. ¶ 21.

Shortly after this initial telephone conversation, O'Donnell informed Ms. Vent that Mars had declined to use her idea for a cross-promotion between Addams Family characters and M & M's candies. About eight months after Mars's refusal, however, Ms. Vent claims that Mars produced several advertisements featuring her idea of cross-promoting Addams Family characters with M & M's candies. These advertisements consisted of M & M's chocolate candy animated characters transmogrified to resemble the cast of television program and the Addams Family theme song (including the finger snaps).

Oral argument was held on January 6, 2009. Subsequent to the oral argument, the parties filed a joint stipulation allowing this Court to consider Mars's M & M's–Shrek cross-promotion advertisement in adjudicating Mars's motion to dismiss the Amended Complaint. Mars has submitted to the Court a DVD with the M & M's–Shrek cross-promotion TV advertisements, which were televised in 2004—approximately two years before Ms. Vent allegedly pitched her cross-promotion idea to Mars. The advertisements feature two animated M & M's characters walking together with two Shrek characters—Shrek himself (voice, Mike Myers) and Donkey (voice, Eddie Murphy)—discussing the "Ogre-sized" M & M's.

## II

## DISCUSSION

### A. Standard of Review

A motion to dismiss must granted if the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss, a court must " 'accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs.' " *Elektra Entm't Group, Inc. v. Barker*, 551 F.Supp.2d 234, 238 (S.D.N.Y. 2008) (quoting *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998)). Ultimately, the purpose of Rule 8 is "to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial." *Id.* (internal quotation marks and citations omitted). In *Bell Atl. v. Twombly*, the Supreme Court held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). A plaintiff therefore must include sufficient factual allegations to "raise a right to relief above the speculative level," *id.* at 1965; that is, the plaintiff must allege "enough

facts to state a claim to relief that is plausible on its face," *id.* at 1974. The Second Circuit has explained that, in its view, "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render a claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007).

## B. New Jersey Law Governing Misappropriation of Idea

■ Under New Jersey law, a party may incur liability for the misappropriation of an idea if " '(1) the idea was novel; (2) it was made in confidence [to the defendant]; and (3) it was adopted and made use of [by the defendant in connection with his own activities].' " *Duffy v. Charles Schwab & Co., Inc.,* 123 F.Supp.2d 802, 807–08 (D.N.J.2000) (quoting *Flemming v. Ronson Corp.,* 107 N.J.Super. 311, 258 A.2d 153, 156–57 (N.J.Super. Ct. Law Div.1969), *aff'd,* 114 N.J.Super. 221, 275 A.2d 759 (App.Div.1971)) (alterations in original).

■ Although novelty has not been clearly defined under New Jersey law, courts have set forth some general guidelines that are helpful in analyzing this fluid concept. An idea is not novel, for example, if "it was merely 'a different application of a long-established principle[ ]' or if 'a competitive product similar to [the plaintiff's] was [already] on the market.' " *Id.* at 809 (*Flemming,* 258 A.2d at 157). "[I]nnovation, originality, or invention" are probative of an idea's novelty. *Id.* An idea that is an "adaptation of an existing idea or [that] embodies elements long in use" may be novel if "the adaptation or combination would lead to a significantly new and useful result." *Id.* at 810. Nevertheless, "[a]n idea lacks novelty if it is merely a

clever or useful adaptation of existing knowledge, or it is no more than a variation on a basic theme." *Bergin v. Century 21 Real Estate Corp.,* No. 98 Civ. 8075, 2000 WL 223833, at *9 (S.D.N.Y. Feb. 25, 2000) (New Jersey law). Given these general principles, the *Duffy* court noted that the following factors are relevant to the novelty inquiry:

(1) the idea's specificity or generality (is it a generic concept or one of specific application?), (2) the idea's commonality (how many people know of this idea?), (3) the idea's originality (how different is this idea from generally known ideas?), (4) the idea's commercial viability (how widespread is the idea's use in the industry?), (5) the idea's obviousness (was the idea an obvious adaptation or application of an idea already in the domain of public knowledge?), and (6) the idea's secrecy (did an otherwise novel idea lose its novelty status because of inadequate steps taken to maintain the idea's secrecy?).

*Duffy,* 123 F.Supp.2d at 810. Finally, the New Jersey federal courts have determined that, under New Jersey state law, the issue of novelty ultimately is one of law for the court, "although some of the factors relevant to a determination of novelty may be factual." *Id.* at 809; *accord Baer v. Chase,* 392 F.3d 609, 628 (3d Cir.2004) ("We believe that the district court [in *Duffy* ] was correct in its conclusion as to how the New Jersey Supreme Court would decide this issue . . . .").

■ In addition to the novelty requirement, a plaintiff asserting a misappropriation of idea claim must show that he or she shared the idea in confidence. "An idea . . . is accorded no protection in the law," New Jersey courts have held, "unless it is acquired and used in such circumstances that the law will imply a contractual or fiduciary relationship be-

tween the parties." *Flemming,* 258 A.2d at 156. New Jersey law defines a fiduciary relationship as one in which "one party places trust and confidence in another who is in a dominant or superior position." *F.G. v. MacDonell,* 150 N.J. 550, 696 A.2d 697, 703–04 (1997); *see also Avon Bros., Inc. v. Tom Martin Construction Co.,* No. A–740–99T1, 2000 WL 34241102, at *4 (N.J.Super. Ct. App. Div. Aug. 30, 2000) (noting that transactions between certain parties are fiduciary in nature, including "between trustee and beneficiary, guardian and ward, agent and principal, attorney and client, corporate director and shareholder, and the members of a partnership").

### 1.

■ Ms. Vent's misappropriation of idea claim must be dismissed on the ground that her idea lacks novelty. Even accepting as true the factual allegations contained in Ms. Vent's Amended Complaint and drawing all inferences in her favor, Ms. Vent's idea was merely "a variation on a basic theme." *Bergin,* 2000 WL 223833, at *9; *Twombly,* 127 S.Ct. at 1965 (holding that a plaintiff must include sufficient factual allegations to "raise a right to relief above the speculative level").

As a preliminary matter, the Court notes Ms. Vent's idea was general and undeveloped. She did not draft any examples or sketches of the advertisement, did not specify the medium that the advertisement would take, and did not write a script. This lack of development assumes particular relevance given the prior cross-promotion advertisements produced by Mars. Although Ms. Vent's specified using animated M & M's candies and members of the Addams Family cast in cross-promoting the Addams Family DVD and Mars's products, her Amended Complaint *concedes* that, prior to Ms. Vent's tele-

phone call to O'Donnell, Mars had promoted its M & M's products with movie releases and, particularly, with DVDs. Am. Compl. ¶ 21. Indeed, in 2004, Mars produced and televised a cross-promotion of Shrek 2 and M & M's, featuring animated M & M's candies and members of the Shrek 2 cast. Accordingly, Ms. Vent's idea also was not "different ... from generally known ideas," but rather "an obvious adaptation ... of an idea already in the domain of public knowledge." *Duffy,* 123 F.Supp.2d at 810. Thus, Ms. Vent's general and undeveloped idea, as pitched to Mars, does not contain any novel aspects—unique visual presentation or particularly witty dialogue, for example—that would set it apart from already extant cross-promotion ideas. Ms. Vent's idea involved minimum creativity—she merely took an existing basic theme (cross-promoting DVDs and M & M's) and substituted her own product without adding any unique or creative details or elements.

■ Ms. Vent submits that she has stated a plausible claim of novelty because the DVD that she was seeking to promote—the Addams Family—was a classic television program, whereas Mars's previous cross-promotion was a relatively recent animated movie. This is insufficient. Under New Jersey law, "[a]n idea will not satisfy the novelty requirement if it is not *significantly* different from, or is an obvious adaptation or combination of ideas in the public domain." *Baer v. Chase,* 392 F.3d 609, 628 (3d Cir.2004) (quoting *Duffy,* 123 F.Supp.2d at 810).

In *Bertani Promotional Displays v. Midwest Display, Inc.,* the Appellate Division of the New Jersey Superior Court affirmed the lower court's determination that a drive through Christmas light show at the Garden State Arts Center was not novel. No. L–4010–02, 2007 WL 685505,

at *5 (App.Div. Mar. 8, 2007). The court explained:

> *While the idea of using the Arts Center parking lot as a venue for a Christmas light show may have been a "specific application," there can be no doubt the idea was a generic concept.* Bertani testified in his deposition that he was aware of a Christmas light display in Union that was "[a]lmost a city block," where people could view "most of it from the street," but could also use a "walkway" to access the display. He also envisioned operating a Christmas show not only at the Arts Center, but at "three places in New Jersey" beside that venue. He had a videotape of a Christmas show in Marion, Indiana, that involved two miles of displays and lights along a riverbank, and used the tape to present his idea to the Arts Center personnel. Howard, of course, was conducting Christmas shows in many venues throughout the midwest, and Roncase testified in his deposition that he was familiar with at least two such displays in New Jersey, one of which, at Liberty State Park, had actually been sponsored by his company. Plaintiff's concept was clearly generic in nature.
>
> These facts also demonstrate that Bertani's idea was commonly known and was original only in the sense that it had never been installed at the Arts Center. The idea was also commercially available; Bertani testified that he contacted three other display fabricators beside

Midwest before deciding to use Midwest as part of the proposal submitted to Roncase. And, the idea was obvious. Bertani himself acknowledged that he had other venues in mind when he made the proposal. In other words, his idea was simply one adaptation of an idea already in the public domain.

*Id.*; *see also Khreativity Unlimited v. Mattel, Inc.,* 101 F.Supp.2d 177, 185 (S.D.N.Y.2000) ("Khreativity's idea was nothing more than a variation on concepts already employed by Mattell—dressing dolls in sports uniforms and, more specifically, dressing dolls in uniforms connected to a sporting event."). As in *Bertani* and *Khreativity,* Ms. Vent's idea was generic, commonly known, commercially available, and obvious.

■ Ms. Vent's counterargument, of course, is that this case is only at the motion to dismiss stage. Relying on the posture of the case, Ms. Vent argues that discovery is needed to flesh out questions related to novelty. Ms. Vent contends that discovery is necessary on five particular questions that, in her view, are probative of novelty.[2] Four of these five questions, however, are *not* probative of the novelty element of her misappropriation claim. Four of these questions address the third element—whether the plaintiff's idea was adopted by the defendant, *Duffy,* 123 F.Supp.2d at 807–08—and the remaining question addresses the confidentiality element. In any event, two factors cut against Ms. Vent's argument that she must be allowed discovery on the issue of novel-

---

**2.** Ms. Vent's questions include: "(1) what evidence, if any, exists as to Defendants' alleged independent creation of the Addams Family characters/M & M's candy characters commercials and/or advertisements?; (2) how many core features of Defendants' advertisements or commercials were substantially similar and copied from Plaintiff's proposal?; (3) how many people, if any, knew of Plaintiff's idea prior to her submission?; (4) how many similar cross-marketing ideas, if any exist with respect to characters from classic television programs?; (5) did the supervisors to who Claire O'Donnell presented Plaintiff's idea . . . have any role or input in the development or production" of the commercials Mars eventually produced? Pl.'s Mem. at 15–16.

ty. First, after *Twombly,* a plaintiff must include sufficient factual allegations to "raise a right to relief above the speculative level," 127 S.Ct. at 1965; that is, "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974. In this case, Ms. Vent's factual allegations regarding her idea, combined with the M & M's–Shrek 2 cross-promotion, preclude her from establishing a plausible claim of novelty at the motion to dismiss stage. Second, the issue of novelty is one of law, and thus there is little concern that the Court will usurp the province of the jury in deciding this issue early in the litigation.

Consequently, Ms. Vent's misappropriation claim must be dismissed on the issue of novelty.

### 2.

■ Independently, Ms. Vent's claim also must be dismissed because her Amended Complaint contains *no* allegations that raise a plausible claim that her idea was shared in confidence. The Amended Complaint appears to assert two bases for establishing the confidence element. First, it states—summarily and without any substantiating factual allegations—that Ms. Vent "presented her idea to Defendants in confidence." Am. Compl. ¶ 24. Second, the Amended Complaint asserts that "a confidential or fiduciary relationship existed between" Ms. Vent and O'Donnell because "the parties did not deal on equal terms." Am. Compl. ¶ 24.

Neither of these assertions is sufficient to survive Mars's motion to dismiss. Although Ms. Vent claims that she presented her idea to O'Donnell in confidence, the Amended Complaint does not assert that

she told O'Donnell that the idea was being shared in confidence or that she otherwise indicated to Mars the confidential nature of her idea. *Compare Duffy,* 123 F.Supp.2d at 813–14 (noting that the plaintiff "requested that the proposal be kept confidential and that [the defendant] agreed to do so"). Ms. Vent does not allege that she requested a confidentiality agreement or even that she limited the dissemination of her idea. At oral argument, Ms. Vent argued for the first time that a confidential relationship was created pursuant to the professional standards implied in the marketing and advertisement worlds. Her Amended Complaint, however, contains no such allegation.[3]

■ Furthermore, Ms. Vent's claim that she and O'Donnell had a fiduciary relationship is unmeritorious. Ms. Vent, an entertainment broker and a business person, cold-called O'Donnell to pitch an arms-length advertisement transaction. This was not a "special relationship based on trust and confidence." *Alexander v. CIGNA Corp.,* 991 F.Supp. 427, 438 (D.N.J.1998) (internal quotation marks and citation omitted) ("[F]iduciary duties are not imposed in ordinary commercial business transactions."). Ms. Vent and O'Donnell did not have a long-standing business relationship, O'Donnell did not agree to serve as a fiduciary, nor did O'Donnell have any special knowledge or skills or occupy a superior position.

Accordingly, Ms. Vent's Amended Complaint fails to plead a plausible claim that she divulged her idea to O'Donnell in confidence. Therefore, Mars's motion to dismiss is granted on this basis as well.

---

**3.** The Amended Complaint only alleges: "At the time Plaintiff submitted and pitched her idea to Ms. O'Donnell, industry custom—for both the entertainment and marketing industries—regarding the submission and use of ideas, was that when a party makes a submission for the use of an idea in advertising to a manufacturer, and the manufacturer actually uses the idea, the manufacturer is required to fairly and reasonably compensate the party which submitted the idea." Am. Compl. ¶ 26.

## CONCLUSION

For the foregoing reasons, the Court grants Mars's motion to dismiss. The Clerk of the Court is directed to close this case, including docket entries number 12 and 3.

*It is so ordered.*